484 A.2d 292

The **HEARST CORPORATION**, et al.

v.

**STATE of Maryland.**

**No. 97, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Dec. 5, 1984.

---

the County Council apportioned the costs between the abutting property owners and the public tax coffers.

Theodore Sherbow, Baltimore (Judith C. Levinson, and Weinberg & Green, Baltimore, on the brief), for appellant The Hearst Corp.

Elizabeth Honeywell, Baltimore (Douglas D. Connah, Jr., G. Stewart Webb, Jr., Leslie A. Vial, and Venable, Baetjer & Howard, Baltimore, on the brief), for appellant, A.S. Abell Pub. Co.

Arthur B. Hanson, Hanson, O'Brien, Birney & Butler, Rockville, Steven Bookshester, Richard M. Schmidt, Jr., J. Brian DeBoice and Cohn & Marks, Washington, D.C., for amicus curiae, American Soc. of Newspaper Editors and Nat. Ass'n of Broadcasters.

Dennis M. Sweeney, Deputy Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., and Rebecca M. Hornbeck, Staff Atty., Baltimore, on the brief), for appellee.

■■■■■■■■■■■

Argued before GILBERT, C.J., WILNER, J., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

GILBERT, Chief Judge.

The "bottom line" of this appeal has been mooted by events. The mootness occurs because the day after the appeal was noted, the State provided The Hearst Corporation and the A.S. Abell Publishing Company, appellants,[1] with the information the publishers had sought from the presiding judge in a criminal trial in the Circuit Court for Baltimore City. Notwithstanding mootness, which mandates dismissal of this appeal, we deem it advisable to explicate *News American v. State*, 294 Md. 30, 447 A.2d 1264 (1982), because of the circuit court's professed uncertainty as to what stage of a trial the holding of *News American* is applicable.

On the fifteenth day of what ultimately was a seventeen day trial in the circuit court in the case of *State v. Shanahan,* the trial judge, *sua sponte,* ordered that the entire court file be "closed" until the conclusion of the trial. The following day, A.S. Abell Publishing Company (Abell), a newspaper publisher, moved to intervene for the limited purpose of asserting its rights under the First Amendment to the Constitution of the United States, the Maryland Constitution, and the common law. Abell sought the names and addresses of the jurors. The next day, the last day of the trial, The Hearst Corporation (Hearst), another newspaper publisher, submitted a similar motion. The trial judge heard oral argument on both motions—Abell's in the morning and Hearst's in the afternoon. At the conclusion of the arguments, the judge did not rule, but said he would hold the motions *sub curia* so that counsel for Abell and Hearst would be able to apprise the judge of some authority that

---

1. A brief *amici curiae* was filed by the American Society of Newspaper Editors and the National Association of Broadcasters.

permitted intervention in a case while the jury was deliberating. Counsel for the appellants conceded that they possessed no such authority and pressed for an immediate ruling. The judge declined to rule at that time. This appeal ensued.[2]

*Appealability of a "non-ruling" on intervention*

At the time the trial judge had the motion to intervene before him, the jury was still in the process of deliberating on the merits of *State v. Shanahan.*[3]

The record reflects the following colloquy between the court and counsel for the appellant Hearst:

"THE COURT: Let me ask you a question. Are you of the opinion that the jury has any rights whatsoever as individual citizens in this State and country?

MR. SHERBOW: In regard to what, may it please the Court?

THE COURT: In regard to their rights of privacy.

MR. SHERBOW: If an individual juror makes an expression to the Court in relationship to privacy, they may exercise that right in as vigorous a fashion as they choose. What my position—

. . . .

THE COURT: My question to you now is, as jurors, do you feel that they have any rights to privacy?

MR. SHERBOW: Only if expressed. They have no more rights than any other citizen that is getting an

---

**2.** This is the second time this matter has been before this Court. When the trial judge refused to permit intervention by Hearst and Abell, we heard argument the next day. Because the State had supplied the information sought by Hearst and Abell, we declined to rule at that time. Instead, we permitted the case to proceed without extraordinary speed.

**3.** Although it has nothing to do with this appeal, for purposes of accuracy and fairness we point out that Mr. Shanahan was tried a second time. At the first trial the jury was unable to agree, and that is the case that lead to this appeal. In the second trial, Shanahan was found not guilty of the charges against him.

inquiry from any source whatsoever, be it a credit inquiry, an inquiry from you or me or otherwise.

THE COURT: But, Mr. Sherbow, the jury is in a stage or state of deliberation now.

MR. SHERBOW: Yes, sir.

THE COURT: And I cannot ascertain from them what their feelings would be on this subject, because I cannot interrupt them to pose that issue to them inasmuch as they are deliberating.

MR. SHERBOW: And may I suggest, may it please the Court, it would be wholly improper for you to suggest to them that they should or should not at this point make any comments to you that do not confine themselves to the instructions that you've given.

THE COURT: So how would they then have the right or how would they have the ability to exercise their rights to determine whether or not they want to have this information divulged?

MR. SHERBOW: The same way, your Honor, that you have the right this evening, when the phone rings and you listen on the other side—

THE COURT: But they're deliberating, and I can't interrupt them." [4]

The appellants, understandably, pressed for immediate rulings on their motions, because anything short of that would frustrate their efforts to meet pre-set publication deadlines. Instead of then ruling whether the appellants could intervene, the judge said:

"It seems that you've come to this court rather inadequately [prepared] to argue your issue if you haven't brought authority to support your point. *I have no*

---

4. A reading of the dialogue between the judge and counsel for Hearst leads to the conclusion that the trial judge was very concerned over what he perceived as the jury's right to privacy. The jury's right to privacy *vel non* is a peripheral issue, which we will not address since it was not raised *and* decided in the circuit court. Md.Rule 1085.

*problem with the press having the right to intervene, but I need some authority granting the press the right to intervene at this stage of ... [the] proceedings.* I'm going to hold this matter *sub curia,* giving counsel an opportunity to do research on this issue." (Emphasis added.)

■ We agree that the press may intervene in a criminal trial for the limited purpose of asserting First Amendment rights. Maryland law holds: 1) the news media has a right to gather news at criminal proceedings; and 2) that intervention is the most appropriate method of protecting or advancing that constitutionally conferred right. *See News American v. State,* 294 Md. 30, 447 A.2d 1264 (1982).

■ The right of intervention, however, is not curtailed by the posture of the trial. Simply because a trial may have reached a certain stage does not mean that First Amendment rights are greater or less than at any other stage. That the jury was deliberating should not have affected the trial court's decision. *News American* does not suggest that the time when a motion to intervene is filed is a consideration upon which a trial judge should ground his decision. A constitutional right to intervene is not suspended or abrogated merely because of the chronological moment at which it is raised.

■ An inference may be drawn from the record that the trial judge deliberately declined to rule in order not to have to grant the motion to intervene—that the judge was, to use the vernacular, "dragging his feet" so as to delay ruling on the motion. If that inference is a correct one, then the judge's action was improper. In any event, we interpret the court's not ruling as a refusal to rule. We equate that declination to rule as a denial of the motion and, therefore, an appealable order. *See Zoning Adm'r of Carroll Co. v. Ireland,* 46 Md.App. 429, 418 A.2d 221 (1980).

### Right of intervention

■ We make perspicuous that it is not error *per se* for a trial court to seal a court file. The right of the media to

obtain access to court files is not absolute. *Buzbee v. Journal Newspapers,* 297 Md. 68, 80, 465 A.2d 426, 433 (1983), citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248, 257 (1982). *Globe* enunciates

> "the circumstances under which the press and public can be barred from a criminal trial [or criminal case file] are limited; the State's justification in denying access must be a weighty one. Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."

457 U.S. at 606–07, 102 S.Ct. at 2620, 73 L.Ed.2d at 257. *See also Patuxent Publishing Corp. v. State,* 48 Md.App. 689, 692–93, 429 A.2d 554, 556–57 (1981).

██ In sum, in order for the trial court to deny the news media access to a criminal trial or criminal case file, the denial must be no broader than necessary to meet a clearly articulated compelling State interest.

As we have seen, it was not the State that moved to deny the media access to the court's file. Rather, it was the trial judge who, *sua sponte,* took that action. What we have said pertaining to closing proceedings or files at the State's behest applies with equal force and effect to judges.

Generally, American courts recognize the public's "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579 (1978) (footnotes omitted).

The purpose behind the right of the public and media to attend trials and inspect court records is obvious. It is through the exercise of such a right that the public knows what transpires in its courts. That right, however, in the words of Justice Powell in *Nixon,* "bowed before the power of a court to insure that its records are not 'used to gratify

private spite or promote public scandal' through ... publication ...." 435 U.S. at 598, 98 S.Ct. at 1312, 55 L.Ed.2d at 580. The courts, for example, have denied access to: "the painful and sometimes disgusting details of a divorce case," *In re Caswell,* 18 R.I. 835, 29 A. 259 (1893); "libelous statements," *Park v. Detroit Free Press,* 72 Mich. 560, 40 N.W. 731 (1888); business information, *Schmedding v. May,* 85 Mich. 1, 48 N.W. 201 (1891); governmental secrets affecting the national security, *see Schaffer v. Kissinger,* 505 F.2d 389 (D.C.Cir.1974); secret technical business information, *Megapulse Inc. v. Lewis,* 672 F.2d 959 (D.C.Cir. 1982); juvenile proceedings, Md.Rule 921; and even jury lists which provide personal background information, as well as the names and addresses of the panel, *United States v. Gurney,* 558 F.2d 1202, 1210 n. 12 (5th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978).

We repeat the "bottom line" of this appeal—the names and addresses of the jury members are a dead issue, as dead as yesterday's newspaper.

APPEAL DISMISSED. ONE–HALF THE COSTS TO BE PAID BY APPELLANTS AND ONE–HALF THE COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.