593 A.2d 224

The **BALTIMORE SUN COMPANY** et al.

v.

**Tyrone Michael COLBERT.**

**No. 159, Sept. Term, 1990.**

Court of Appeals of Maryland.

July 29, 1991.

Mary R. Craig (Doyle & Craig, P.A., Baltimore), on brief, for appellant.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, Baltimore), on brief, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and MARVIN H. SMITH, Judge of the Court of Appeals of Maryland (retired, Specially Assigned), JJ.

MURPHY, Chief Judge.

The primary questions presented are (1) whether the press and the public are entitled to prior notice of, and an opportunity to oppose, an oral motion to close a courtroom

during a pretrial proceeding in a criminal case and (2) whether the court's hearing on the closure motion, and its sealing of a related written motion, satisfied the requirements of the First and Fourteenth Amendments to the United States Constitution and Article 40 of the Maryland Declaration of Rights.[1]

## I.

Tyrone Michael Colbert was charged in the Circuit Court for Howard County with first degree murder, armed robbery, use of a handgun in the commission of a felony, and carrying a concealed deadly weapon. Trial was scheduled for December 3, 1990. Previously, the State had filed notice of its intention to seek the death penalty and, in the alternative, life without the possibility of parole. On November 29, 1990, Colbert filed a "Motion to Enforce Terms of Plea Bargain Agreement or Alternatively to Strike the State's Notice to Seek Death Penalty or Life Imprisonment Without Parole." The motion was not docketed at that time and was subsequently sealed by the court. Pretrial hearing on the motion was scheduled that same day.

After a bench conference with counsel at the commencement of the hearing,[2] the court (Kane, J.) announced that Colbert had asked it to exclude the public from the hearing on his motion. The State opposed exclusion. The court stated that it was aware of the subject matter underlying the motion, and would "evaluate the public's right to know about the issue against this Defendant's right to a fair trial which might be somehow impacted upon the subject matter of the proceeding that's before the court." The court found that "the subject matter of this particular motion is such

---

1. Article 40 of the Maryland Declaration of Rights provides
 "[t]hat the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."

2. The transcript of the bench conference is under a seal order.

that ... in balancing the rights of the public to know against the rights of the Defendant, the rights of the Defendant ultimately to a fair trial mandate that I exclude the public and press from this particular hearing."

Michael J. Clark, a reporter for the Baltimore Sun Company who was present in the courtroom, voiced his opposition to closure of the court and said that he would immediately procure counsel. The court responded that it would proceed with the closed hearing, and that when counsel for The Sun arrived, he would hear their arguments in opposition to closure.

The court then ordered the exclusion of everyone from the courtroom, except for the parties and counsel. Witnesses were ordered to remain outside of the courtroom until called to testify. Proceedings closed to the press and the public on Colbert's written motion then commenced.

Counsel for Michael J. Clark and The Sun appeared in court to oppose the closure. She stated that she had been informed of the closure at approximately 3:00 p.m., arrived at the courtroom at approximately 4:00 p.m., and was admitted at approximately 6:00 p.m. She asked that The Sun be allowed to intervene for the limited purpose of asserting its and Clark's rights under the First Amendment and the Maryland Declaration of Rights to attend pretrial criminal proceedings. Counsel asked the court to articulate its reasons for closing the courtroom. The court responded that it had balanced the public's "right to know" against the defendant's right to a fair trial and concluded that "the Defendant's right to a fair trial mandated that a certain portion of the hearing not be conducted in the presence of the public."

The Sun then moved that it be informed of the subject matter of the closed proceeding, and that its reporter be provided with a tape recording of the proceedings and access to Colbert's undocketed motion. These motions were denied.

The Sun promptly appealed. We issued a writ of certiorari before consideration of the appeal by the intermediate appellate court to address the important issues raised in the case.

## II.

The Sun contends that it has a constitutional and common law right to attend pretrial hearings in pending criminal cases and to inspect pleadings. It avers that the trial court violated these rights when it failed to provide timely notice of the courtroom closure and afford it the opportunity to oppose closure prior to the exclusion of the public. It suggests that the closure itself was improper because the trial court failed to either make the findings of fact necessary to justify closure of the courtroom or to consider alternatives to closure. The Sun further asserts that the court's order that participants in the closed hearing not discuss what occurred violates the First Amendment and is a prior restraint on speech and, as such, carries a heavy presumption of constitutional invalidity.

Colbert responds that the trial court acted properly when it closed the hearing. He argues that the court provided the reporter and The Sun with an opportunity to object to closure and to procure counsel, and that nothing more was required. Colbert also contends that the court did not err in declining The Sun's request that it describe the nature of the hearing. He contends that where public articulation of the reasons for closure would frustrate the purpose of the closure, a detailed description of the reason for closure is not required.

## III.

There is a presumptive right of access to pretrial proceedings in criminal cases. In *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980), the Supreme Court held for the first time that the First and Fourteenth Amendments to the

United States Constitution guarantee that criminal trials are presumptively open to the public. It said: "In guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those explicit guarantees." *Id.* at 575, 100 S.Ct. at 2826. The Court predicated the presumptive right of access on both the history of open criminal proceedings, and on the role that access plays in the function of the judicial process. *Id.* at 569–73, 100 S.Ct. at 2823–26. These historical and functional considerations have subsequently been applied to extend a right of access to voir dire proceedings, *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*); preliminary hearings before a magistrate in a criminal case, *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*); and pretrial suppression hearings, *Buzbee v. Journal Newspapers, Inc.*, 297 Md. 68, 465 A.2d 426 (1983).

In *Press–Enterprise II*, the Court used a two-prong test in determining whether a qualified right of access attaches to a judicial proceeding. The first consideration is "whether the place and process have historically been open to the press and general public." 478 U.S. at 8, 106 S.Ct. at 2740. The second is "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* The Court concluded that "[i]f the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." *Id.* at 9, 106 S.Ct. at 2740.

Applying the two-prong test to preliminary proceedings in criminal cases, the Court noted that it is nearly uniform practice for both state and federal courts to conduct preliminary criminal proceedings in open court. The Court evidenced the historical foundation of this practice by referencing the pretrial probable cause hearing in the celebrated treason trial of Aaron Burr in 1807. The hearing was held in the Hall of the House of Delegates in Virginia because

the courtroom was too small to accommodate the number of interested citizens. Thus, the Court concluded that "[o]pen preliminary hearings ... have been accorded 'the favorable judgment of experience.'" *Id.* at 11, 106 S.Ct. at 2742 (quoting *Globe Newspaper v. Superior Court* 457 U.S. 596, 605, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982)).

As to the second prong of the test, the Court found that public access to preliminary proceedings plays a significant role in the function of the judicial process. Because preliminary proceedings frequently determine the result in a criminal proceeding, it said that they may present the only opportunity for the public to observe the judicial process. *Id.* 478 U.S. at 12, 106 S.Ct. at 2742. Open pretrial hearings in criminal cases provide a therapeutic value for the community by enabling the public to observe law enforcement. *Id.* at 13, 106 S.Ct. at 2742. The Court concluded that the First Amendment affords the public a qualified right of access to preliminary hearings in criminal cases.

Anticipating the two-prong test applied in *Press–Enterprise II*, we held in *Buzbee v. Journal Newspapers, supra,* 297 Md. at 76, 465 A.2d 426, that there is a qualified right of access to pretrial proceedings in criminal cases "predicated on the First and Fourteenth Amendments and on Article 40 of the Maryland Declaration of Rights." *Id.*[3] While the openness of pretrial proceedings in criminal cases is not supported by centuries of tradition, *id.* at 77, 465 A.2d 426, the practice in Maryland has been that pretrial motions in criminal cases are presumptively open. *Id.* at 78, 465 A.2d 426. We noted that access to pretrial proceedings plays a significant role in the function of the judicial process. Judge Rodowsky, writing for the Court, observed that "[i]f members of the public are to be able to evaluate the work of trial judges, prosecutors, and public defenders in the criminal justice system, there must be access to pretrial

---

**3.** The majority of states considering this issue have extended a presumptive right of access to pretrial proceedings in criminal cases. *Press–Enterprise II, supra,* 478 U.S. at 10 n. 3, 106 S.Ct. at 2741 n. 3.

proceedings which are the only proceedings had in the great mass of criminal cases." *Id.* at 80, 465 A.2d 426.

## A.

■ The right of access to pretrial criminal proceedings, however, is not absolute. *Globe, supra,* 457 U.S. at 606, 102 S.Ct. at 2619; *Buzbee, supra,* 297 Md. at 80, 465 A.2d 426. Exclusion of the public from a courtroom is an extreme remedy and should be used only in limited and unusual circumstances. "Closed proceedings ... must be rare and only for cause shown that outweighs the value of openness." *Press–Enterprise I, supra,* 464 U.S. at 509, 104 S.Ct. at 823. A court's case by case determination concerning whether conditions are present which permit closure requires that representatives of the press and the general public " 'be given an opportunity to be heard on the question of their exclusion' ". *Globe, supra,* 457 U.S. at 609 n. 25, 102 S.Ct. at 2621 n. 25 (quoting *Gannett Co. v. DePasquale,* 443 U.S. 368, 401, 99 S.Ct. 2898, 2916, 61 L.Ed.2d 608 (1979) (Powell, J. concurring)).

■ Adequate public disclosure of a motion for closure is particularly important because, without it, the public's right of open access to courtrooms might not be asserted by parties to a particular proceeding. Accordingly, a motion to exclude the public from a pretrial hearing in a criminal case requires a public disclosure of the filing to permit the public to assert its right of access. Consequently, for the public to be able to assert this right in a meaningful fashion, the motion must be docketed in advance of the time of the hearing to provide notice to afford an opportunity to oppose the closure motion, as well as to present alternatives to closure. The court should provide individuals opposing closure an opportunity to object and to state the reasons for that opposition before ruling on the closure motion. *See, e.g., New York Times v. Demakos,* 137 A.D.2d 247, 529 N.Y.S.2d 97, 100 (1988); *In Re Times World,* 7 Va.App. 317, 373 S.E.2d 474, 478 (1988); *In Re Globe Newspaper Co.,*

729 F.2d 47, 56 (1st Cir.1984); *In Re Knight Pub. Co.*, 743 F.2d 231, 234 (4th Cir.1984); *In Re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir.1984); *Newman v. Graddick*, 696 F.2d 796, 802 (11th Cir.1983); *State v. Williams*, 93 N.J. 39, 459 A.2d 641, 658 (1983); *Application of the Herald Co.*, 734 F.2d 93 (2nd Cir.1982); *United States v. Criden*, 675 F.2d 550, 557–60 (3rd Cir. 1982); *United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir.1982); *Matter of Westchester Rockland Newspapers v. Leggett*, 48 N.Y.2d 430, 442, 423 N.Y.S.2d 630, 399 N.E.2d 518 (1979). However, we emphasize that, as stated in *United States v. Criden*, 675 F.2d 550, 559 (3rd Cir.1982), "individual notice to the press or to the public before a ... court entertains a motion to close a pretrial criminal proceeding" is not required as it would be "unwarranted and impractical in the context of the administration of criminal litigation." To the same effect, *see In re Knight Pub. Co.*, 743 F.2d 231, 234 (4th Cir.1984).

█ Where it is impracticable to give notice in advance of a motion to close a proceeding, those present in the courtroom should be informed that closure is sought, that they have a right to oppose closure, and will be afforded a reasonable opportunity to do so.

### B.

█ While The Sun did not specifically challenge the adequacy of notice given by the court of the closure motion and proceeding, we shall exercise our discretion under Md. Rule 8–131(a) and rule on the issue.[4]

---

4. Md.Rule 8–131(a) provides:

"(a) Generally.—The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or

Although the court provided the public and The Sun with notice of the closure motion and an opportunity to oppose it, it did not do so until after it ruled in favor of closure. As the cases hold, both notice and a reasonable opportunity in the circumstances to be heard in opposition to a closure motion must be provided before a ruling is made on the motion.

## V.

### A.

 The presumption that pretrial proceedings are open to the public can be overcome only by an "overriding interest," such as an accused's right to a fair trial. *Press–Enterprise I, supra,* 464 U.S. at 510, 104 S.Ct. at 824. The party moving for closure has the burden of proving that "higher values" will be infringed by publicity; that closure of the courtroom will prevent such prejudice; and that reasonable alternatives to closure cannot protect the asserted values. *Press–Enterprise II, supra,* 478 U.S. at 13–14, 106 S.Ct. at 2742–43. Where, as in this case, the right asserted in support of closure is a defendant's Sixth Amendment right to a fair trial, a hearing may be closed only if specific findings are made on the record. The trial court must find that

> "first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. See *Press–Enterprise I, supra; Richmond Newspapers, supra,* [448 U.S.] at 581 [100 S.Ct. at 2829]."

*Id.* 478 U.S. at 14, 106 S.Ct. at 2743.

 A determination that it is substantially probable that prejudice will result from an open hearing requires a factu-

---

desirable to guide the trial court or to avoid the expense and delay of another appeal."

al inquiry into the extent of publicity that the case has received and is likely to receive after the hearing. Other considerations are the nature of the information that will be made public during the hearing, community reaction to information about the defendant, the crime with which the accused is charged, and whether closure of the courtroom will prevent the asserted prejudice. *See, e.g., Buzbee, supra,* 297 Md. at 82–83, 465 A.2d 426; *State v. Williams, supra,* 459 A.2d at 654.

The trial court must find specifically that no reasonable alternative short of closure of the courtroom will protect the defendant's right to a fair trial. *Richmond Newspapers, supra,* 448 U.S. at 580–81, 100 S.Ct. at 2829–30; *Buzbee, supra,* 297 Md. at 82, 465 A.2d 426. Alternatives to closure include, but are not limited to: continuance, change of venue, voir dire, voluntary cooperation of the media, and jury instructions. *See Buzbee, supra,* 297 Md. at 82, 465 A.2d 426; ABA Standards of Criminal Justice 8–3.2 (2d ed. 1980). Where reasonable alternatives to closure of a proceeding exist, which will protect the rights of the accused, the extreme remedy of closure is improper. General statements that publicity will deprive the defendant of his right to a fair trial are insufficient to overcome the presumption of openness. *Press–Enterprise II, supra,* 478 U.S. at 15, 106 S.Ct. at 2743.

The proper conduct of the hearing of a motion to close carries with it its own problems. Ordinarily, at the hearing the moving party must inform the court of the precise nature of sensitive information, which necessarily will be revealed at the proceeding to be closed, and must convince the court that the public disclosure of that information would interfere with the constitutional guarantee of a fair trial. Patently, if the sensitive information is publicly disclosed at the hearing of the motion for closure, the very damage sought to be avoided is done. Thus, the hearing of the motion must itself often be closed to the public, at least in part. In making the determination of how much, if any,

of the closure motion must be conducted privately, the trial judge must receive, on the record but not publicly, proffers sufficient to allow the judge to make an informed decision. That part of the record may, of course, be sealed, but for no longer than is reasonably required.

The next logical question involving the conduct of a hearing of a motion for closure involves the extent of participation to be permitted to individuals who appear in opposition to closure. Again, there is an obvious problem— if a representative of the press is allowed to participate in every aspect of the hearing, including the disclosure of information which should be kept confidential, there is no protection against immediate publication of that information. *See Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (members of the press may report what they are permitted to see and hear in the courtroom). A possible solution to this dilemma is to secure the agreement of those participating that they will not publicly disclose the information for a specified time.[5] In the absence of an agreement, it may be necessary to exclude the nonparty objectors during those portions of the hearing of the motion at which the sensitive information is disclosed or necessarily discussed. Even in this event, the trial judge should make the protestants aware, to the extent possible, of the problem being considered, and afford an adequate opportunity for argument in opposition to closure. All phases of the hearing, public and nonpublic, must be conducted on the record to ensure an adequate basis for appellate review. *Buzbee, supra,* 297 Md. at 84, 465 A.2d 426; *Patuxent Publishing Corp. v. State,* 48 Md.App. 689, 693, 429 A.2d 554 (1981); *see also State v. Williams, supra,* 459 A.2d at 659; *Westchester Rockland Newspapers v. Leggett, supra,* 423 N.Y.S.2d at 637, 399

---

5. The agreed time for nondisclosure will vary according to the circumstances of the case. It may, for example, be until verdict, until the jury has been sequestered, until the information is otherwise made public, until further order of the court, or otherwise as reasonably required by the circumstances of the case.

N.E.2d at 525; *In Re Times–World Corp., supra,* 373 S.E.2d at 479. The trial judge may then seal portions of the record, but no more, and for no longer time than is reasonably required.

### B.

In the instant case, the trial court failed to make the required findings before it closed the courtroom. The court's broad statement that it found that the exclusion of the public was mandated in order to afford Colbert a fair trial was insufficient to warrant exclusion of the press and the public from the hearing. Moreover, the court is required to narrowly tailor the closure order to serve the asserted interest. *Press–Enterprise I, supra,* 464 U.S. at 510–11, 104 S.Ct. at 824–25. The court closed the courtroom during the pretrial hearing and then sealed the transcript in its entirety, as well as Colbert's motion to enforce the terms of a plea agreement. The court should have considered whether it could conduct the proceeding in open court hearing sensitive portions during a bench conference or in chambers. In this regard, the court should have considered sealing only the portions of the transcript of the proceeding that revealed prejudicial material.

### VI.

As to the sealed pleadings in this case, we note that there is a common law right to inspect and copy judicial records and documents. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); *Hearst Corp. v. State,* 60 Md.App. 651, 484 A.2d 292 (1984). The public's right of access to such records, though qualified, entitles it to "notice of counsel's request to seal, and an opportunity to object to the request before the court ma[kes] its decision." *In Re Knight Pub. Co.,* 743 F.2d 231, 235 (4th Cir.1984). As with a motion to close a courtroom, a motion to seal should be docketed reasonably in advance of the request, if practicable. *Id.* A court ruling on a motion to seal judicial records should

articulate the interest sought to be protected by the seal, supported by specific findings. *Id.* The seal order should be as narrow as possible to protect the interests asserted in support of closure. *Hearst, supra,* 60 Md.App. at 658, 484 A.2d 292. The court should consider alternatives to a broad seal, including the option of redacting portions of pleadings or transcripts, and the precise limitation on the duration of the seal order.

In this case the court neither conducted a hearing before it sealed the motion to enforce the plea agreement, nor made any statement on the record articulating the reasons for the seal.

### *Conclusion*

For the reasons stated, we find that Judge Kane did not follow the required procedure before he closed the courtroom and held an evidentiary hearing on the merits of Colbert's motion to enforce the plea agreement. In the circumstances, therefore, there was no lawful basis upon which the court conducted the pretrial proceedings in a courtroom closed to the public and to the press, and thereafter sealed the transcript of these proceedings and Colbert's motion to enforce the plea agreement. Accordingly, we will vacate Judge Kane's order declining to unseal the transcript and the motion to enforce the alleged plea agreement. At the same time, however, we will direct that the seal on these documents be temporarily continued pending the outcome of further proceedings before the circuit court, as herein directed.

The docket entries disclose that Colbert's motion to enforce the alleged plea agreement was denied. They also show that the court granted Colbert's motion to strike the State's notice to seek the death penalty or life imprisonment without the possibility of parole. As a consequence, Colbert, if convicted, is not faced with either of these sentences.

Colbert has not as yet been tried. That the transcript of the closed proceedings and the motion to enforce the plea agreement, if unsealed and made public prior to Colbert's trial, may prove prejudicial to him is a consideration as to our disposition of the case now before us. We think a remand to the circuit court to afford that court the further opportunity to consider, in light of the governing constitutional and common law principles, whether to unseal the documents is appropriate in the present circumstances of the case.

ORDER OF THE CIRCUIT COURT FOR HOWARD COUNTY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.