598 A.2d 507

**John DOE**

v.

**SHADY GROVE ADVENTIST HOSPITAL, et al.**

**No. 1058, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Nov. 27, 1991.

352

Steven H. Sanders, Washington, D.C. and Patricia A. Smith (Dale Edwin Sanders, Sanders, O'Donnell & Smith, Alexandria, Va., Steven Weinberg and Steinmetz, Weinberg & Moats, Washington, D.C., on the brief), for appellant.

Benjamin S. Vaughan, Rockville, for appellee, Shady Grove Adventist Hosp., Inc.

S. Allan Adelman and Godard, West & Adelman, P.C. on the brief for appellee, Roger Byrd, Judith Catterton and Catterton, Kemp & Mason on the brief, Rockville, for appellee, Christine Josephson.

Argued before BLOOM, BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

The issue as presented to us by the parties in this expedited appeal is whether the Circuit Court for Montgomery County abused its discretion in lifting a seal of the records of this case. The issue we decide, however, is whether appellant demonstrated a compelling interest in protecting the confidentiality of his identity which can be accommodated consistent with the presumption of open access to court records. We will hold that he has.

Appellant filed his complaint on July 11, 1991 under the fictitious name of John Doe, alleging breach of confidentiality of patient medical records and invasion of privacy. The causes of action arose out of appellant's hospitalization at Shady Grove Adventist Hospital, in January and February of 1990, for pneumonia. During the course of this hospital stay, he was diagnosed as having AIDS. A respiratory therapist at the hospital, one of the individual appellees, treated appellant in connection with appellant's pneumonia. The complaint alleges that the therapist shared appellant's medical records with another respiratory therapist at Shady

Grove, who knew appellant from high school. Furthermore, the complaint alleges, the second therapist revealed appellant's diagnosis and other confidential information contained in his medical records to several of appellant's family members and friends. Appellant alleges he neither knew of nor authorized these contacts. Specifically, he contends that the second therapist told appellant's friends and family that appellant had AIDS, was dying, had homosexual experiences, and was a heavy drug user.

Appellant brought his complaint against both respiratory therapists and their employers, Shady Grove Adventist Hospital and Capital Health Care, appellees in this case. Appellant alleges that as a result of appellees' dissemination of information relating to his AIDS diagnosis, he has suffered a deprivation of his seclusion, emotional distress, worry, anxiety, fear and humiliation. The complaint further alleges that the information was circulated unlawfully, without his authorization. Appellant seeks both compensatory and punitive damages totalling $4.5 million.

Simultaneously with the filing of his complaint, appellant filed a Motion for Ex Parte Injunction and a Motion for Interlocutory Injunction. Both motions sought (1) to bar appellees from publicly identifying appellant and (2) permission from the court to proceed under the fictitious name John Doe. The motions further sought to seal[1] the record to the extent necessary to preclude disclosure of appellant's identity and to preclude disclosure of facts that would reveal his identity. The court granted the Motion for Ex Parte Injunction on July 11, 1991. On July 19, 1991, the parties appeared for a hearing. The same judge who granted the Ex Parte Injunction ruled from the bench that the parties could use appellant's name only for purposes of conducting discovery. Although appellant did not seek

---

1. Perhaps appellant's use of the word "seal," even for a limited purpose, was an unfortunate choice of words. As we will hold, no actual sealing of the records is necessary to grant appellant the relief he sought in the trial court.

such broad relief, the judge also sealed the entire record of the case except for the names of counsel of record and their authorized agents/designees.[2]

A hearing on the Motion for Interlocutory Injunction was held before a different judge on July 26, 1991. At that hearing, The Times Journal Company, publisher of the Montgomery Journal, moved to intervene in the case to assert its interests in open court hearings and court records. The motion to intervene was granted. On that same day, The Times Journal also filed a Memorandum of Points and Authorities in Opposition to the Closure of Hearings. The Times Journal asserted a First Amendment right of access in the case, asserting that the public has a right to know of the names and identities of persons who invoke judicial processes.

The Times Journal, together with the four appellees, claimed that appellant had waived any rights he may have had to protection of his identity by giving interviews to the press. Two exhibits—one, an article from the Washington Post, and the other, an article from the Montgomery Gazette—were accepted as evidence at the hearing. Neither of the articles identified appellant by name. The articles did, however, mention the town where he lived, the name of the high school he attended, and a physical description of appellant. Appellant gave interviews to several local news channels, but their reports were broadcast without mentioning his name. Appellant also issued a press release about the suit on the same day he filed the complaint. Appellant gave the interviews and issued the press release, according to his counsel, only with the stipulation that all interviews

---

2. This case is being heard as an expedited appeal pursuant to Rule 8-207. Therefore, the parties have submitted an agreed statement of facts for the purposes of our decision. The preceding discussion of the July 19 hearing and the judge's ruling is taken from that statement. Because this is an expedited appeal, and because part of the record has been sealed in the circuit court, we do not now have before us a full and complete record of the proceedings below. As such, our characterization of the July 19 and July 26 hearings is based solely on the parties' agreed statement of facts.

would be conducted under promises of anonymity. The press was only allowed to contact appellant through his counsel. To date, this promise of anonymity has not been broken. Appellant's attorney also asserts that appellant will continue to enforce the anonymity requirement in any future dealings with the press.

At the hearing on the Motion for Interlocutory Injunction, the motions judge found that the public has a presumptive right of access to court proceedings and court records under the First and Fourteenth amendments of the United States Constitution and Article 40 of the Maryland Declaration of Rights; that appellant had not shown that a compelling governmental interest would be served by the order he sought; and that, by electing to go to the media, he had waived any claims to confidentiality he might otherwise have asserted. On July 31, 1991, the judge ordered that the seal be lifted and the records of the case be open to the public in all respects. He then stayed the order pending the outcome of this appeal. On August 13, 1991, appellant filed his Notice of Appeal to this Court. The Times Journal has since withdrawn as an intervenor in the suit.

In this appeal, appellant contends that:

—his constitutional right to privacy constitutes a compelling interest that outweighs the presumption of openness under the First Amendment; and

—the trial court erred in finding he had waived his rights to confidentiality by issuing a press release and granting interviews with the media.

Although we agree that the entire record of the case may be open to the public, we will reverse the judge's order to the extent that it fails to protect the confidentiality of appellant's identity.

## APPELLANT'S REQUESTED ORDER

At the hearing on the interlocutory injunction, the judge found that the public has a presumptive right of access to court proceedings and records. He ruled that this right

"can be overcome only on the basis of evidence that closure is necessary to serve a compelling governmental interest and that closure will be effective in securing that compelling interest, and only if the closure order is narrowly tailored to minimize interference with the public's right of access and there are no alternatives to closure that would achieve the compelling governmental interest."

The judge then found that no compelling governmental interest would be served by an order protecting the confidentiality of appellant's identity. We hold that the judge correctly stated the legal test for access to court proceedings. We also hold, however, that he erred in ruling that no compelling governmental interest would be served by an order protecting the confidentiality of appellant's identity. We explain.

▮▮▮ The United States Supreme Court has never directly addressed the issue of access to civil court proceedings and records. It has held, however, that public access to criminal trial proceedings is a right inherent in the First Amendment.[3] *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603–605, 102 S.Ct. 2613, 2618–2619, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448

---

**3.** In the instant case, the press organization, the Times Journal Company, which originally intervened to make the First Amendment argument in the circuit court, has since withdrawn from the case. In the absence of the newspaper, appellees have continued to assert the open access contention in this Court. Although it is usually asserted by the press, the right of open access is a *public* one, and may be argued by any interested party. *See State v. Cottman Transmission Sys., Inc.,* 75 Md.App. 647, 659, 542 A.2d 859 (1988) (discussing "access to the courts by the people themselves *or* through reports supplied them by the media") (emphasis added); *Hearst Corp. v. State,* 60 Md.App. 651, 658, 484 A.2d 292 (1984) (discussing "the right of the public *and* media to attend trials and inspect court records....") (emphasis added). We feel compelled to note that had the newspaper remained in the case, the arguments made on behalf of the First Amendment right of access might have had a slightly different focus. We also note that appellees already know appellant's identity and have identified no independent need that appellant's identity be made public outside of the general First Amendment right.

U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980) (plurality opinion). Although it dealt with criminal trials, *Richmond Newspapers* noted that historically both criminal *and* civil trials have been presumptively open to the public. *Richmond Newspapers*, 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17 (plurality opinion); *see also Gannett Co. v. DePasquale*, 443 U.S. 368, 386–387 n. 15, 99 S.Ct. 2898, 2908–2909 n. 15, 61 L.Ed.2d 608 (1979) (in rejecting an asserted Sixth Amendment right of the public to attend criminal trials, the Supreme Court noted that at common law, both criminal and civil trials were open to the public). Furthermore, the Supreme Court has also held that court records are presumptively open to the public as well. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978).

Both the lower federal courts and this Court have applied the First Amendment analysis to civil as well as criminal proceedings. *Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988); *F.T.C. v. Standard Fin. Management Corp.*, 830 F.2d 404, 408 (1st Cir.1987); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067 (3rd Cir.1984); *In Matter of Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir.1984); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir.1983), *cert. denied* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); *Newman v. Graddick*, 696 F.2d 796, 802 (11th Cir.1983); *Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982), *cert. denied sub. nom. Baldwin v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *State v. Cottman Transmission Sys., Inc.*, 75 Md.App. 647, 655, 542 A.2d 859 (1988). These cases have held that the policy reasons enunciated by the Supreme Court in support of public access to criminal proceedings apply with equal force to civil proceedings. *Cottman*, 75 Md.App. at 656, 542 A.2d 859. Furthermore, newspapers may intervene in criminal cases for the limited purpose of asserting the First Amendment right of access to court proceedings and court records. *News American Division v. State*, 294 Md. 30, 45, 447 A.2d

1264 (1982); *Hearst Corp. v. State,* 60 Md.App. 651, 657, 484 A.2d 292 (1984). We hold that such intervention is also proper in the civil context.

The right of access guaranteed by the First Amendment and Article 40 of the Maryland Declaration of Rights applies to pretrial proceedings, *Buzbee v. Journal Newspapers, Inc.,* 297 Md. 68, 76, 465 A.2d 426 (1983), trial proceedings, *Erman v. State,* 49 Md.App. 605, 633–634, 434 A.2d 1030 (1981), *cert. denied* 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982), and court records, *Hearst Corp.,* 60 Md.App. at 658, 484 A.2d 292. The holdings of both the Supreme Court and the courts of Maryland clearly state, however, that the right of access inherent in the First Amendment is not absolute. *Globe,* 457 U.S. at 606, 102 S.Ct. at 2620, citing *Richmond Newspapers,* 448 U.S. at 581 n. 18, 100 S.Ct. at 2830 n. 18 (plurality opinion). The right of access may be limited "when an important countervailing interest is shown." *Cottman,* 75 Md.App. at 656, 542 A.2d 859, quoting *Publicker Indus.,* 733 F.2d at 1071. The party seeking to restrict access to court proceedings or records carries the burden of establishing the need for the restriction. *Cottman,* 75 Md.App. at 656–657, 542 A.2d 859.

> "Since the right of public access is firmly embedded in the First Amendment, 'it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'"

*Cottman,* 75 Md.App. at 657, 542 A.2d 859, quoting *Globe,* 457 U.S. at 607, 102 S.Ct. at 2620.

■ Here, appellant proffered his constitutional right to privacy as the compelling governmental interest which would be protected by a confidentiality order. The judge ruled that this interest did not rise to the level of a compelling governmental interest. In the circumstances of this case, we disagree.

Like the First Amendment right of access, the constitutional right to privacy is another of the certain unarticulated rights implicit in the enumerated guarantees of the

Bill of Rights. These unarticulated rights are on equal footing with, and are indispensable to the enjoyment of, the explicitly defined rights. *Richmond Newspapers*, 448 U.S. at 579–580, 100 S.Ct. at 2828–2829. The right of privacy is grounded in the concept of personal liberty embodied in the Fourteenth Amendment, and has roots in the First, Fourth, Fifth and Ninth Amendments. *Roe v. Wade*, 410 U.S. 113, 152–153, 93 S.Ct. 705, 726–727, 35 L.Ed.2d 147 (1973).

According to the allegations of his complaint, appellant has contracted the AIDS virus.[4] This diagnosis was made while he was a patient at Shady Grove Adventist Hospital, suffering from pneumonia. Appellant alleges that appellees unlawfully informed other people, including members of his family and his friends, of his AIDS diagnosis, without his permission. Assuming no defense is established, these allegations, if true, make out a patent violation of his right to privacy. Dissemination of his name in the media, to thousands if not millions of people through newspapers and television, would result in an even greater violation of his privacy than has already occurred. We hold that the protection of appellant's privacy is a sufficiently compelling governmental interest to support some limitation on the public's constitutional right of access to the records of this case. *Cottman*, 75 Md.App. at 657, 542 A.2d 859 ("interests compelling enough to overcome the presumption of openness usually take the form of a privacy right"). *See*

---

**4.** Appellant makes much of the social stigma and discrimination which usually accompanies the AIDS virus. While we agree with his analysis, neither the constitutional right to privacy nor Md.Health–Gen.Code Ann. § 4–301 (1982, 1989 Repl.Vol.) is addressed specifically to the AIDS virus or those who have contracted it. Because we conclude that appellant has otherwise demonstrated a compelling privacy interest sufficient to entitle him to a confidentiality order, we decline to make any broad policy judgments about whether the AIDS virus *itself* should entitle appellant to a confidentiality order. This argument is more appropriately directed to the General Assembly than to the courts. *See, e.g.,* 35 Pa.Stat.Ann. §§ 7601–7612 (Purdon Supp.1991) ("The Confidentiality of HIV–Related Information Act"), discussed in *In re Application of Milton S. Hershey Medical Center,* 407 Pa.Super. 565, 595 A.2d 1290 (1991).

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (protective orders for discovery materials based on an asserted privacy right of one of the parties). *Cf. Rasmussen v. South Florida Blood Serv.,* 500 So.2d 533, 537 (Fla.1987) (granting plaintiff in a personal injury case access to the names of blood donors would infringe the constitutionally protected privacy interests of the blood donors).

Although not asserted by appellant, at least two other interests exist, clearly present on this record, that provide further support for our conclusion that appellant is entitled to an order protecting the confidentiality of his identity. First, in addition to his constitutional right to privacy, appellant's complaint alleges a violation of Md. Health–Gen.Code Ann., §§ 4–301–305 (1982, 1990 Repl.Vol.),[5] which establishes a presumption of confidentiality for medical records. Widespread dissemination of appellant's identity in this litigation would not only undermine this legislative determination, but would also exacerbate the injury he alleges that he has already suffered at the hands of appellees. Appellees will then be able to argue that appellant suffered no damages as a result of their actions, because the information later became public. As a result, the Legislature's determination, codified in §§ 4–301–305, that medical records are presumptively confidential, would rarely if ever be vindicated in the courts.

A second, and somewhat related interest served by a confidentiality order is to encourage those whose rights under §§ 4–301–305 and the constitutional right to privacy have been violated to pursue vigorous enforcement of those rights in the judicial setting. Potential plaintiffs, who believe that their rights may have been violated, will be loath to bring their complaints to court if the end result will be

---

5. Because this case is here on a collateral matter, and in a pretrial setting, we express no opinion as to the applicability of any of the exceptions to the presumption of confidentiality enumerated in the Health–Gen. Article. This issue may arise if this case should proceed to trial.

further and even more widespread violation of those rights. An order protecting the confidentiality of appellant's identity would serve the state's interest in encouraging individual enforcement of constitutional and statutory rights.

We conclude that the judge erred in holding that no compelling governmental interest would be served by an order protecting the confidentiality of appellant's identity. With respect to proceeding as a John Doe, this is all that appellant was required to show. *Doe v. Prudential Ins. Co.*, 744 F.Supp. 40, 41 (D.R.I.1990).[6] Therefore, he is entitled to an order allowing him to proceed under a fictitious name.

■ Although not raised by either party, Rule 2–201 arguably would bar appellant from proceeding under a fictitious name: "Every action shall be prosecuted in the name of the real party in interest...." No Maryland cases have addressed this issue, although we have found two Court of Appeals cases which are titled in fictitious names, without any analysis of the right to do so. *Doe v. Board of Educ. of Montgomery County*, 295 Md. 67, 453 A.2d 814 (1982); *Doe v. Commander, Wheaton Police Dept.*, 273 Md. 262, 329 A.2d 35 (1974). In a slightly different approach, the Court of Appeals answered a certified question using initials to protect the identity of the parties in *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988).

Although no Maryland cases have addressed the right to proceed anonymously, Rule 2–201 is patterned after Rule 17(a) of the Federal Rules of Civil Procedure. Rule 17(a)

---

**6.** *Prudential* involved a contest over the proceeds of a life insurance policy between the family of the decedent, who died of AIDS, and the alleged male spouse of the decedent. Despite its recognition and concern for the privacy interests of the decedent's family, the court rejected the family's request to proceed under a fictitious name, ruling that "it is inappropriate for the Court to bar access to otherwise public records solely on the basis of subjective feelings of confidentiality or embarrassment of the type asserted here." *Prudential*, 744 F.Supp. at 41. In contrast to *Prudential*, appellant here is not alleging some subjective desire for confidentiality, but has filed a complaint grounded on the constitutional right to privacy itself.

does not expressly provide for anonymous plaintiffs; however, the weight of authority in the federal circuits is that, at least under some circumstances, plaintiffs seeking to be shielded from some serious harm or injury may proceed anonymously. In *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir.1981), the court said:

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials are not inevitably compromised by allowing a party to proceed anonymously. Nevertheless, there remains a clear and strong First Amendment interest in ensuring that what transpires in the courtroom is public property." (citations omitted)

*See United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir.1980) (pseudonyms allowed to "protect a person from harassment, injury, ridicule or personal embarrassment"); *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712–713 (5th Cir.1979) (cataloging the justifications in previous cases for allowing fictitious name filings); *Lindsey v. Dayton–Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir.1979) (fictitious name filing rejected in that case, because "allowed only where there is an important privacy interest to be recognized"). All of these cases note that the Supreme Court has given implicit approval to fictitious name filings in the abortion and birth control contexts. *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Roe*, 410 U.S. at 113, 93 S.Ct. at 705; *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

Even the dissenting opinion in *Doe*, 655 F.2d 920, 930 n. 1 (Sneed, J., dissenting) recognizes that some circumstances warrant allowing a party to proceed anonymously (where "anonymity was closely connected to the very rights asserted by the party requesting it", and where "plaintiffs were required to reveal information of an intimate and personal nature in order to vindicate constitutional or statutory rights grounded in the protection of privacy.") We hold that, even under this most restrictive of tests, appellant is entitled to proceed under a fictitious name.

■ Appellant, however, also sought an order restraining appellees from disclosing his identity or any facts likely to lead to such disclosure. Because the public has a presumptive right of access to court records, *Nixon*, 435 U.S. at 597, 98 S.Ct. at 1311; *Hearst Corp.*, 60 Md.App. at 658, 484 A.2d 292, appellant must show that a compelling governmental interest is served by such an order, and the limitation on the public right of access is no greater than is necessary to serve that compelling governmental interest. *Globe*, 457 U.S. at 607–608, 102 S.Ct. at 2620–2621; *Cottman*, 75 Md.App. at 657, 542 A.2d 859.

We have already held that an order protecting the confidentiality of appellant's identity serves a compelling governmental interest. Appellant, using unfortunately chosen language, asked for an order "sealing" the record to the extent necessary to protect the confidentiality of his identity. On remand, however, the order need not seal the records of the case at all. The trial judge could order that all papers filed in the case either identify appellant as John Doe, or, to the extent they clearly lead to or contain his true identity, that they be redacted. With respect to court proceedings, counsel and witnesses could be instructed to refer to appellant only as "John Doe" or "plaintiff." In our view, such an order, if properly and carefully drawn and administered, would not intrude at all on the public's right of access to court records. At the same time, it would serve the compelling governmental interests in protecting the confidentiality of appellant's true identity. Appellant has not asked for

the entire record to be sealed, nor for the public or press to be barred from access to either court proceedings or the records. While his choice of language may have been unfortunate, he has simply sought to protect the confidentiality of his name. Counsel has suggested no less intrusive mechanism for protecting the compelling governmental interests presented by this case other than an order of the type described above.

### WAIVER OF THE RIGHT TO CONFIDENTIALITY

■ In the order appealed from, the judge found that appellant had waived any claims to confidentiality of court records or proceedings. The judge based this finding on appellant's contacts with the press.[7] Appellant argues that he has not waived his right to confidentiality because he has not provided his identity to any members of the press. Appellant also claims there has been no waiver because he has not filed any documents in the public record which reveal his identity. Appellees argue that appellant's contacts with the media have negated any compelling privacy interest that appellant might have.

Waiver is the "intentional or voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right...." *Black's Law Dictionary* 1417 (5th ed. 1979). Few other words in legal usage have as many meanings as the word "waiver." *Douglas v. General Motors Acceptance Corp.*, 205 Tenn. 432, 326 S.W.2d 846, 849 (1959). Appellees argue vigorously that appellant's extensive contacts with the media amount to a waiver of his right to confidentiality. We disagree.

While it is true that appellant has provided substantial information about himself that could lead to the discovery of his name, he has never revealed his true identity. There is a distinction. To the members of the public-at-large, the

---

7. Appellant also contacted several family members and friends and informed them of his condition. These contacts are not the basis for the waiver claim.

information revealed so far means little in the abstract. The revelation of one's name, however, gives one an identity that anyone can readily recognize, stranger and friend alike. Appellant has a job that necessitates extensive contacts with the public. While some who otherwise know appellant could infer his identity, the general public will not be able to determine his identity from the amount of information that has already been provided. If, however, his name was disclosed, he would be instantly recognizable to people he was meeting, even for the first time. This could place his livelihood in jeopardy.

All of appellant's interviews with the press were conducted only after appellant's counsel exacted promises of anonymity, in the event that the media inadvertently obtained appellant's name. This tactical decision at least protected him from the publication of his name by interviewers. The Supreme Court has recently held that such promises of anonymity are completely enforceable. *Cohen v. Cowles Media Co.,* —— U.S. ——, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991). Appellant has taken precautions to keep his identity hidden; thus, we cannot say that there has been a waiver of his right to the confidentiality of his identity.

The standard of review to be employed in a case such as this is articulated in Rule 8–131(c):

"When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."

In the instant case, appellant issued press releases and granted interviews with various local news organizations. Thus, we do not dispute the judge's factual findings that appellant made extensive contacts with the press. Since he stopped short of revealing his name, however, he did not relinquish his right to keep his name out of the public record. Therefore, we differ with the judge's conclusion

that appellant's contacts with the media constituted a waiver of the right to confidentiality.

In *Buzbee,* a criminal defendant, indicted on multiple counts of rape, moved for closure of the pretrial suppression hearing, a "gag order," and the sealing of court records. The Court of Appeals affirmed the decision of this Court vacating the closure, "gag order" and record sealing orders. This was due, in part, to the fact that Buzbee had filed a memorandum of law in support of the orders with the information he wished to keep sealed affixed to it. *Buzbee,* 297 Md. at 84, 465 A.2d 426. The memorandum of law became public prior to the grant of certiorari by the Court of Appeals. Thus, there was no need to uphold the orders. This is not true of the case now before us. Appellant has not filed any documentation in the court record containing his true name except for the original affidavits which have been placed under seal.[8] So far as we are aware, none of the other documents available to the public contain appellant's name.

The Supreme Court of Florida best summarized the risks of disclosure in *Rasmussen,* 500 So.2d at 537, as it weighed the competing interests of blood donors with AIDS and the recipients of the tainted blood, who later acquired the disease:

"The threat posed by the disclosure of the donors' identities goes far beyond the immediate discomfort occasioned by third party probing into sensitive areas of the donors' lives. Disclosure of donor identities in any context involving AIDS could be extremely disruptive and even devastating to the individual donor. If the requested information is released, and petitioner queries the donors' friends and fellow employees, it will be function-

---

**8.** Since we do not have the portion of the record containing the affidavit before us, we can only assume that appellant's name and any information that would point immediately to his identity can be readily deleted.

ally impossible to prevent occasional references to AIDS. As the [Florida] district court recognized:

'AIDS is the modern day equivalent of leprosy. AIDS, or a suspicion of AIDS, can lead to discrimination in employment, education, housing and even medical treatment.' "

The prevailing wisdom among AIDS experts is for someone who has tested positive for the HIV virus to keep that information as quiet as possible, sharing it only with those people whose support can be counted on.[9] In the instant case, appellant has made a conscious choice not to reveal his name to the public-at-large. This is a choice we must respect. In addition, we do not find that he has waived his right to confidentiality. Even though he has had extensive contacts with the public and press he has stopped short of revealing his true identity. Therefore, we hold that the judge erred in ruling that appellant waived his right to the confidentiality of his identity.

## CONCLUSION

Appellant, seeking to protect his privacy and maintain the viability of his lawsuit, requested that he be allowed to proceed as a John Doe, and also requested that the confidentiality of his identity be maintained by the court and the parties to the litigation. Although he phrased his request in unfortunately chosen terms, his requested relief was, in fact, quite modest.

The holding we make today is not, and should not be read as, a broad rationale for closing access to court proceedings or court records. Our holding is narrow: while recognizing

---

9. The Washington Post, Nov. 12, 1991, (Health), at 7. Ironically, just prior to the hearing of this appeal, basketball star Magic Johnson revealed to the world that he was suffering from the HIV virus. It is hoped by many that his courage in revealing his condition will remove some of the stigma associated with the disease. At oral argument, appellant noted the great discrepancy between Magic Johnson's status in life and his own status. He pointed out that Magic Johnson will not face the same type or degree of discrimination that most with this disease confront.

a paramount First Amendment interest of the public in open access to court proceedings and court records, we hold that appellant has demonstrated a compelling interest in maintaining the confidentiality of his identity, which is sufficient to overcome any interest the public may have in knowing that identity. We believe that an order protecting the confidentiality of appellant's identity can be drawn and administered in a manner which will not hamper the vitally important right of the public to be informed and aware of the workings and proceedings of the judicial system. The motions judge who heard appellant's Motion for Interlocutory Injunction was also extremely sensitive to the public's right of access when he ordered that the "proceedings and record of this case will be open to the public in every respect." We disagree with him only as to the last three words.

Finally, although appellant had extensive contacts with the media during this case, we hold that his actions did not constitute a waiver of the right to confidentiality of his identity, per se.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

CASE REMANDED FOR ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.