**Ruth Coleman RATLIFF, Administratrix of the Estate of Lawson Ratliff, Deceased, Appellant,**

v.

**BIG SANDY COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

April 30, 1965.

Dan Jack Combs, Ronald W. May, Pikeville, for appellant.

Francis M. Burke, Pikeville, for Conway Drilling Co.

William J. Baird, Pikeville, for Big Sandy Co.

Edward R. Hays, Pikeville, for Ratliff Elkhorn Coal Co. and Ratliff Coal Co.

DAVIS, Commissioner.

Lawson Ratliff was killed by a landslide along a private roadway near the mouth of a coal mine where he worked. The appellant, as his administratrix, filed this wrongful death action, and appeals from the judgment below which dismissed her complaint after a pre-trial statement by her counsel of the facts proposed to be proven.

The fundamental bases upon which appellant rests her case are (1) that her decedent was a business invitee at the time he met his death; (2) that the appellees were grossly negligent in their failure to properly shore the face of the wall which crumbled; (3) that the decedent was not guilty of any contributory negligence, or (4) alternatively, that the defense of contributory negligence is not available because appellees' negligence was wanton.

Appellee Big Sandy Company is a landholding company which had leased coal rights to the appellees, Ratliff Elkhorn Coal Company and Ratliff Coal Company. In turn, the two Ratliff companies contracted with decedent's employer, C & E Coal Company, for the latter company to deep mine a portion of the premises held under lease from Big Sandy Company. By a later agreement, the Ratliff companies were authorized by Big Sandy to remove coal from the same seam by utilizing the auger method of mining. Pursuant to that agreement, appellees Billy J. Epling and Thomas Epling, d/b/a Conway Drilling Company, proceeded to auger mine coal from the same seam being deep mined by decedent's employer.

The drilling company (Conway) began the augering operation by drilling the first auger hole at a point about 135 feet from the driftmouth of the deep mine in which decedent was working. In proceeding with the augering process the drilling company removed the overburden from the coal seam and constructed a crude dirt road for the use of mining machinery, trucks and automobiles. As a consequence of this activity

the coal was faced and a "high-wall," ranging from 18 to 25 feet in height, was left above the coal seam. The roadway extended along the base of this high-wall, and at the time of the accident had been extended somewhat more than 1100 feet from its beginning point.

Employees of the C & E Company, including the decedent, necessarily used the roadway in going to and from their work in the deep mine. This usage was known to all of the appellees, according to the appellant's theory of the case. On the date of the accident the decedent had come to work as a passenger in the automobile of a fellow employee. When he and the car owner went to the vehicle preparatory to driving home, it was found that the car would not operate. The car owner left the scene to seek repairs; decedent procured a container and expressed his intention of going to the base of the high-wall to obtain some coal for his personal use. No one observed decedent thereafter until his entombed body was removed from the earth and debris resulting from the avalanche when the high-wall gave way.

All of the appellees filed motions to dismiss the complaint for failure to state a claim upon which relief could be granted. CR 12.02. However, when the motions to dismiss came on for hearing the trial court called upon appellant's counsel to state the proof he expected to develop on trial, and considered the matter as if being heard "in the nature of a pre-trial hearing." (It is not clear whether this was deemed to be a pre-trial conference within the meaning of CR 16, or as if upon motion for summary judgment under CR 56, but the trial order recites that appellant's counsel agreed to the procedure.)

In either event, the trial court requested appellant's attorney to make a narrative statement of the facts he expected to adduce in evidence; the statement is transcribed in the record and, for the purposes of this decision, is uncontroverted. In addition to the facts above set forth, the state-

ment by counsel avers that the site of the accident was 176 feet from the center of the driftmouth of the C & E mine, and approximately ten or fifteen feet from the parked automobile in which decedent had expected to travel to his home.

Further factual assertions contained in the statement of counsel include these: that none of the appellees had taken any step to render safe the auger hole, either by covering the hole or in any other way; that the high-wall adjacent to the C & E mine, in a westerly direction ranged from eighteen to twenty-five feet in height above a forty-inch coal seam; no danger warning was posted along or about the high-wall; it was necessary for decedent, and other employees of C & E, to pass along the roadway at the point where the accident occurred; the width of the roadway or "bench" at the accident site was about 35 feet from the base of the high-wall to the edge of the fill; there was no absolute requirement that decedent walk or be at the foot of the high-wall, although there was no prohibition against his so doing; employees and employers at C & E mine "freely used this area"; decedent had been employed in the area for five months, and knew of the existence of the high-wall; the high-wall was composed of rock, dirt and vegetation and was of irregular contour; since the date of the accident nearly all of the wall has collapsed.

The trial court expressed the view that the high-wall was of the usual and ordinary type in such operations; hence, there was no negligence in its maintenance. Moreover, the trial court expressed the view that even if it be determined that the high-wall was hazardous per se, the decedent's estate is precluded from recovery by reason of contributory negligence and assumption of risk on the part of decedent. The trial court made no finding relating to whether he regarded decedent's status as that of a business invitee or a mere licensee.

Under the circumstances of this record, we are impelled to the conclusion that it was erroneous for the trial court to summarily dismiss the appellant's complaint on the bare basis of statement of her counsel as to intended proof.

It would appear that decedent's status on the premises was as a business invitee. At least, we think it is not deducible as a matter of law that decedent's status was that of a bare licensee, based upon the narrative statement of counsel.

Whelan v. Van Natta, Ky., 382 S.W.2d 205, and the authorities therein discussed, may not be said to rule the present case insofar as decedent's status is concerned. In the present state of the record, there is not sufficient factual basis to warrant a summary holding that decedent's invitation had ceased, or that he had gone to a point beyond the scope of the invitation. We think it may not be doubted that decedent enjoyed the status of business invitee while upon the premises for the purposes of performing his labors there; it seems equally clear that his same status prevailed while he was using the premises for the purposes of going to and from his place of work.

In 38 Am.Jur., Negligence, Section 100, p. 761, it is written:

"The law imposes upon the owner of a building the duty of keeping the approaches thereto in a reasonably safe condition for use by persons having business in the building, and he can be held liable for an injury sustained by one whom he has invited or induced to come upon the premises, where the injury was sustained as the result of an unsafe condition of the approaches."

The rationale of that legal statement is equally applicable to the approaches to the site of the business invitation in the case at bar. Cf. 38 Am.Jur., Negligence, Section 130, pp. 790–791, in which this language is found:

"The duty which an owner or occupant owes to one using a way upon the premises by invitation is such that the owner or occupant cannot make exca-

vations or leave unprotected openings so close to the line of way as to render travel thereon unsafe, without incurring liability to the invitee for an injury sustained by him from such dangerous condition. This does not mean, however, that an invitee can hold the owner or occupant liable for an injury received by him while deviating materially from the way covered by the invitation. It does mean that one who leaves a dangerous excavation on his property cannot avoid liability for injury to one who, coming upon the premises on business, is injured by falling into it, on the theory that it was not in the path which he was entitled to travel, if it was so close thereto that he could not transact his business without coming in such proximity to it as to render it perilous to him."

It is our conclusion that the present record fails to support the proposition that decedent had so far deviated from the area of his invitation as to lose his status as business invitee. We are not to be understood as here ruling that he did occupy that status—rather that the question must be ultimately determined upon a fuller exposition of the factual background.

Neither do we believe that the present record warrants summary ruling as a matter of law that the decedent was guilty of contributory negligence, or assumption of risk, or both. He may have been, but there is not sufficient evidence here to sustain a conclusion as a matter of law that he was. Moreover, there is sufficient basis in the narrative statement of appellant's counsel to warrant the inference, at least, that some or all of the appellees may have been guilty of wanton negligence. Assuming, without deciding, that decedent had been guilty of contributory negligence, this defense would not be available if the negligence of appellees (or any of them who may be found guilty of such negligence) was of that degree which may be considered wanton. Bickel v. Bennett, 267 Ky. 232, 101 S.W.2d 943. Cf. Prosser on Torts, 2d Ed., pp. 289-290, in which it is said:

> "The same is true [contributory negligence is not a defense] of that aggravated form of negligence, approaching intent, which has been characterized variously as 'wilful,' 'wanton,' or 'reckless,' as to which nearly all courts have held that ordinary negligence on the part of the plaintiff will not bar recovery."

We reiterate that we are not to be understood as here adjudicating that decedent was a business invitee, nor that he was free of contributory negligence or assumption of risk; neither is this opinion to be considered a ruling on our part that all or any of the appellees were guilty of negligence, ordinary or wanton. What we are deciding is that upon the record as now comprised, there is not sufficient factual basis to warrant the summary dismissal of the complaint; all other questions are reserved for appropriate action in light of more detailed facts.

The judgment is reversed for further proceedings consistent with the opinion.