Patsy A. WHEELER, Appellant,

v.

Edward L. CREEKMORE, Jr., and London Guaranty & Accident Company, Ltd., Appellees.

Court of Appeals of Kentucky.

July 2, 1971.

Edward F. Rectenwald, Robinson, Rectenwald & Tackett, Cletus E. Amlung, Louisville, for appellant.

C. Alex Rose, John K. Gordinier, Curtis & Rose, Charles E. Duncan, Louisville, for appellee London Guaranty & Accident Co., Ltd.

Terrence R. Fitzgerald, Louisville, for appellee Edward L. Creekmore.

CULLEN, Commissioner.

Patsy A. Wheeler sued Edward L. Creekmore for damages growing out of a collision between her automobile and Creekmore's. Alleging that Creekmore was an uninsured motorist, Mrs. Wheeler joined as a defendant her own liability insurer, London Guaranty & Accident Company, Ltd. Creekmore counterclaimed for damages sustained by him. The jury found both parties negligent and denied recovery to either. Judgment was entered accordingly, from which Mrs. Wheeler alone has appealed. She asserts errors in the instructions, and that as a matter of law she was not contributorily negligent. She further claims errors in regard to the handling of the insurance phase of the case.

The accident occurred on a rainy night in December, on a subdivision street in Jefferson County. Mrs. Wheeler, driving west, observed the automobile of a neighbor, Mr. Brewer, stopped in the right-hand lane, also headed west. She drove her car into the left-hand lane and brought it to a stop in that lane about one car length ahead of the Brewer car. She turned off the engine, got out of the car, and went over to the Brewer car to ask whether she could render assistance. Brewer told her that he was out of gas but he needed no assistance, and Mrs. Wheeler then returned to her car, got in, and was about to start

the engine when her car was struck head-on by Creekmore's car, coming from the west. She said that her lights had been left burning, but both Creekmore and Brewer testified that her lights were off.

Creekmore testified that he had turned onto the street, from an intersecting street, about one-half a block away; when he turned he was traveling 5 to 10 miles per hour, and after turning he increased his speed to about 20 miles per hour. When he made the turn he observed lights of a car which appeared to be approaching in its proper lane. As he came nearer he discovered that the car was not moving. He "started watching to see what was going on, I kept watching this car and then I glanced up and there sets Mrs. Wheeler's car and I hit my brakes and it was too late, I hit." He said that the visibility ahead was partially obscured by the headlights of the Brewer car, and that when he got within 50 feet they became blinding.

■■■ Mrs. Wheeler's first complaint of error is with respect to an instruction that she had the duty not to stop her car and leave it standing on the main portion of the highway. She maintains that the statute, KRS 189.450(1) which prohibits stopping or leaving a vehicle on the main traveled portion of a "highway," does not apply to suburban streets. The argument cannot prevail because this court expressly held the statute applicable to suburban streets in unincorporated areas in Evans v. Lorenz, Ky., 454 S.W.2d 691. Furthermore, it is our opinion that the common-law standard of care of the ordinary prudent man would impose the duty not to stop a car and leave it standing in the left lane, blocking the highway, on a rainy night, regardless of statute. Cf. Greyhound Corporation v. White, Ky., 323 S.W.2d 578. We conclude that the trial court did not err in giving the instruction complained of.

■■ The appellant's second contention is that as a matter of law any negligence on her part in stopping her car and leaving it standing in the wrong lane was not a proximate cause of the accident. There is no merit in that argument. The accident that happened is exactly the kind of accident the statute was designed to prevent. See Saddler v. Parham, Ky., 249 S.W.2d 945. Creekmore was in the class of persons the statute was intended to protect. Cf. Cottrell v. Martin A. Ceder, Inc., Ky., 376 S.W.2d 536. What happened was a natural and probable result of Mrs. Wheeler's negligence. See Parker v. Redden, Ky., 421 S.W.2d 586. The cases relied on by Mrs. Wheeler are not in point, because some of them deal with situations in which a person standing in the highway was struck and the fact that his car also was standing in the highway played no part in the accident, and the others deal with situations in which the accident would have happened even had there been no illegal parking.

■■■ The third ground of error asserted by the appellant consists of the trial court's refusal to give a requested instruction to the effect that if the jury believed that Creekmore was operating his automobile while under the influence of intoxicants, he was guilty of gross, willful or wanton negligence, in which event contributory negligence on the part of Mrs. Wheeler would not be a bar to her recovery. (There was some evidence that Creekmore was drunk.) It is true that the defense of ordinary contributory negligence is not available if the defendant's negligence was wanton. First Nat. Ins. Co. of America v. Harris, Ky., 455 S.W.2d 542; Ratliff v. Big Sandy Company, Ky., 389 S.W.2d 911. However, we are not persuaded that the fact alone that a motorist is under the influence of intoxicants in and of itself establishes wanton negligence on his part, for purposes of civil liability, without regard to whether the manner in which he operated his vehicle was reckless or wanton. Some of our early *homicide* cases appear to have gone that far. See Newcomb v. Commonwealth, 276 Ky. 362, 124 S.W.2d 486. But a reevaluation was made in Marye v. Commonwealth, Ky., 240

S.W.2d 852, and we are not aware of any case since then, in this jurisdiction, holding that the driving of an automobile while under the influence of intoxicants is of itself wanton negligence. So it is our opinion that the appellant in the instant case was not entitled to the requested instruction.

■ The appellant next contends that the trial court erred in refusing to give a requested last clear chance instruction. She argues that when the peril developed, from the approach of Creekmore's car, she was unable to extricate herself because her motor was turned off and she did not have time to start it, place her car in motion, and drive to her right side of the road; wherefore Creekmore should be liable under the last clear chance doctrine if he *should have* discovered her peril in time to avoid the accident. Since the proposition as thus presented rests on discoverability, it is obvious that the conditions of visibility at the time of the accident are of vital significance. We think the controlling question is whether or not the lights of Mrs. Wheeler's car were on. If they were not on, as was the testimony of Brewer and Creekmore, we think there was no basis for a last clear chance instruction, because reasonable minds would agree that in the rainy darkness and the glare of the lights from the Brewer car, a driver in Creekmore's position should not be charged with the duty of discovering the Wheeler car in time to leave a clear chance to avoid striking it.

If, however, the lights of Mrs. Wheeler's car were on, as she testified, a different situation existed as to discoverability. Creekmore, as soon as he entered the road at the intersection, would have been confronted with two sets of car lights, one in each lane of the road. Approaching at not more than 20 miles per hour, as he said he was, reasonable minds could believe that he should have realized before he had gone very far that both vehicles were stopped. Reasonable minds further could believe that Creekmore, when he should have become aware that the roadway was blocked by two stopped cars, had a clear chance at his slow rate of speed to bring his car to a stop before reaching the Wheeler car. Thus the facts would warrant a finding that he had the last clear chance.

■ It is true that the doctrine of last clear chance ordinarily does not apply between two motorists, but it can apply where one of the motorists is incapable of extricating his vehicle from the position of peril. See Weintraub v. Cincinnati, N. & C. Ry. Co., 299 Ky. 114, 184 S.W.2d 345.

It is our conclusion that the appellant was entitled to a last clear chance instruction, conditioned upon a finding by the jury that the lights on Mrs. Wheeler's car were on. The failure to give such an instruction was reversible error.

Two questions remain for consideration, relating to the insurance aspects of the case.

■ As hereinbefore stated, Mrs. Wheeler joined her own liability insurer as a party, on the allegation that Creekmore was an uninsured motorist. At the commencement of the trial Mrs. Wheeler's counsel made the following motions (in chambers):

"We move that the insurance carrier, London Guaranty, either be severed from this cause of action and have the issue of liability and issue of damages be binding upon it, or in the alternative in which Mr. Rose [London Guaranty's counsel] does not want to be severed and wants to be a party, we think the jury should know who he is and what his interest is, and inquire whether the jurors have any financial interest or other connection or association with that company.

"And secondly, the plaintiff understands that the burden of proving that the defendant Creekmore is uninsured and the existence of our uninsured motorist coverage and the limitation is upon

the plaintiff, and for that reason we desire to get into the record either before the jury, or if necessary, by way of an avowal, that he is in fact uninsured, as he stated in his deposition, and the limits of her liability coverage, which I don't see how we can do unless we are allowed to present evidence on it."

The court's ruling was: "You will be allowed to present evidence but not in the presence of the jury." Mrs. Wheeler argues on this appeal that the trial court's ruling was erroneous to the extent that it precluded Mrs. Wheeler as plaintiff from disclosing to the jury the fact that the insurance company was a party and that Mr. Rose was its counsel. We agree. The insurance company was in fact a party and we think properly so, because it had a direct contractual obligation to Mrs. Wheeler. See KRS 304.682; Cf. Hickey v. Insurance Company of North America, D.C., 239 F.Supp. 109, and Wortman v. Safeco Insurance Company of America, D.C., 227 F.Supp. 468. Since the company was a party and was actively represented by counsel we think the jury was entitled to know that fact and to have the company's counsel identified. Otherwise the jury would be left to speculate as to the interest represented by an attorney participating in the trial who had no apparent connection with any of the parties. It is our opinion that the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield in uninsured-motorist cases to the procedural desirability of letting the jury know who are the parties to the litigation where the uninsured motorist carrier elects to participate actively in the trial.

When Creekmore filed his counterclaim Mrs. Wheeler notified her insurer of that fact, in accordance with the requirements of the policy. The insurer then employed an attorney to defend the counterclaim in addition to the attorney who was representing the insurer as a defendant. Mrs. Wheeler moved to be relieved of the duty of cooperating with the insurer, and that the attorney employed by the insurer to defend the counterclaim be removed from the case. The trial court did not sustain the motion, and Mrs. Wheeler claims error in that regard. She relies on O'Bryan v. Leibson, Ky., 446 S.W.2d 643, in which the factual situation was identical but in which the trial court *sustained* the plaintiff's motion.

In O'Bryan the insurer's attorney who had been removed by the trial court's order sought prohibition from this court. We denied the petition, holding that the trial court "did not usurp or abuse his power and acted in such a manner as to cause justice to be done." While the specific holding was only that the trial court had not erred in removing the insurer's attorney and in relieving the plaintiff of the duty to cooperate, the opinion indicates this court's view that the circuit court was required in the interests of public policy to rule as it did. We continue to adhere to the view that it would be contrary to public policy to allow the insurer to control the litigation, in the factual situation here presented, by permitting the insurer's attorney to have charge of the defense of the counterclaim and by requiring the plaintiff to cooperate in that defense. So it is our opinion that the trial court in the instant case erred in not sustaining the motion in question. As concerns the matter of cooperation, however, we do not mean to hold that the plaintiff is not required to furnish essential information to the insurer; he is relieved of cooperation only to the extent it would involve surrender of control of the litigation to the insurer.

Since we are reversing the judgment for the error of refusing to give a last clear chance instruction it is unnecessary for us to decide whether the error with respect to the insurance question was prejudicial so that it alone would authorize a reversal. We direct, however, that upon another trial, if the plaintiff insists upon a ruling on her motion, the trial court shall grant it.

The judgment is reversed, with directions for further proceedings in conformity with this opinion.

All concur (OSBORNE, J., concurring by separate opinion) except that NEIKIRK, J., dissents from so much of the opinion as holds that the trial court should have permitted the fact of insurance to be disclosed to the jury.

OSBORNE, Judge (concurring).

I concur in the majority opinion and especially do I look favorably upon that portion of the opinion which permits a plaintiff to join the insurance company with the defendant and to disclose to the jury the fact that there is insurance and the extent of coverage. I have felt for some time that our policy in this state of not permitting insurance to be mentioned in actions where there is liability coverage does more harm than good. The Supreme Court of Florida in Shingleton v. Bussey, Fla., 223 So.2d 713 (1969), has recently faced up to this situation and reversed all of its previous cases holding as we have been. It is my opinion that the policy should be viewed as one vesting in the injured third party a direct cause of action and the clause in most policies which prohibits action against the insurer until judgment is first obtained against the insured is against public policy. In facing up to this proposition the Supreme Court of Florida stated:

"Admittedly, a contract of insurance can be entered into which imposes certain reasonable conditions or limitations on the responsibility of the insurer to pay out the proceeds or benefits contemplated by the contract. But such conditions cannot unreasonably burden or curtail the otherwise actionable right of a third party beneficiary to sue jointly the parties charged with liability, viz., the tort-feasor and the insurer of the tort-feasor. The insurer is, of course, not a joint tort-feasor. The unfettered right of a plaintiff to sue defendants jointly is so universal and essential to due process that it can rarely be curtailed or restricted by private contract between potential defendants. An insurer is free not to enter into a liability policy with an insured, but if it does so it cannot unreasonably circumscribe its potential liability under the contract by stipulating therein restraints upon the right of the third party beneficiary to sue directly an insurer contingently or secondarily liable and to join the insurer as a defendant in the action to determine the liability of the insured.

"Such a view is particularly warranted where as in the present case the injured party plaintiff is a nonconsenting party to the contract and derives standing as a third party beneficiary entitled to sue in a direct joint action to recover the benefits of the policy by virtue of operation of law.

"The insured may agree to conditions vis-a-vis the insurer to waive his own constitutional rights and curtail or postpone his remedies under the policy, but it is a contradiction of public policy to contract for liability coverage for members of the public and simultaneously deny a beneficiary thereunder the ordinary rights of a litigant to sue for such coverage through the restraint of a 'no joinder' clause. It is an anomaly in the law and discriminatory for the parties to a contract to attempt to deny nonconsenting members of the public a full, complete, adequate remedy at law which is constitutionally guaranteed all citizens."

There is no other instance in the law of which I have knowledge that permits the real party in interest to an action to remain anonymous. For the life of me, I cannot see why this right should be accorded insurance companies. I believe the time is at hand when we should lay the interests of all parties on the board for the jury to see and consider. As was pointed out in the Shingleton case, supra, this "ostrich head in the sand" approach to the problem

which we have been following does more mischief by misleading juries than it does good. I would extend the rule today adopted in this case for noninsured motorist policies to all indemnity policies.