RODOWSKY, Judge.
 

 This action was brought by the insureds against the insurer on a policy of underinsured motorist (UIM) insurance. Trial was before a jury. The Circuit Court for Baltimore City, at the request of the insurer, forbade the parties from identifying the insurer as the defendant before the jury. Submitting that this restriction constituted reversible error, the insureds appeal from a judgment that was within the limits of the tortfeasor’s automobile liability policy. For the reasons stated below, we conclude that the insureds’ point is well taken.
 

 On the date of the automobile accident involved here, February 9, 2001, the appellants, Penelope King (Mrs. King), and her husband, Thomas R. King, Jr., were insured by the appellee, State Farm Mutual Automobile Insurance Company (State Farm), under a policy that contained UIM coverage of $100,000 per person and $300,000 per occurrence. The accident occurred when Mrs. King, while crossing a street in the pedestrian crosswalk, was struck by an automobile operated by one Wendy Farley (Ms. Farley), as a result of which Mrs. King suffered bodily injuries. The claims against Ms. Farley were resolved first. Her automobile liability insurance carrier, Allstate Insurance Company (Allstate), settled for $20,000.
 
 [1]
 
 
 *290
 
 The parties to the action before us agree that this payment was the limit under the Allstate policy for appellants’ claims.
 
 [2]
 
 Thereafter, appellants brought the instant action against State Farm claiming $80,000 in their ad damnum.
 
 [3]
 

 Prior to trial of the UIM claim, the parties agreed that Ms. Farley was solely responsible for the accident, that State Farm’s UIM policy was in effect at that time, that its limits were $100,000/$300,000, and that the credit against any verdict in favor of Mrs. King would be $20,000. The extent of Mrs. King’s injuries, however, was sharply disputed.
 

 Against this background, State Farm, on the morning trial was to begin, moved
 
 in limine
 
 that identification of State Farm as the defendant be prohibited. Referring to Maryland Rule 5-411, dealing with the exclusion of references to liability insurance, State Farm submitted that it was “inherently prejudicial to discuss the insurance coverage.” Mrs. King opposed the motion, arguing that “the mere fact that an insurance company is a party to a case is not a basis to claim prejudice” and that “the defendant!] now want[s] to make up a fictitious case[.]” The trial court granted the motion, reasoning as follows:
 

 “!A]11 this jury is going to be asked to consider is the injuries suffered and the damages that they’re entitled to.
 

 “So I agree there are cases where it would not be appropriate to limit any mention of State Farm. I don’t think in the context it’s presented here, or the posture of
 
 *291
 
 this case at this time that there is really any reason to get into that. The question is damages. So I’m going to grant the defense motion in limine in terms of referencing the case.”
 

 The colloquy with the court then turned to how, precisely, the ruling could be implemented. State Farm submitted that there was “no reason to reference the defendant,” while Mrs. King suggested that the difficulty of implementation was why the prohibition should not be imposed. The court, reaffirming its ruling, concluded that, “[i]n terms of calling the case,” it would give a brief description about the plaintiffs’ seeking damages “and make it clear those are the only issues we’re dealing with.”
 

 In view of the court’s ruling on State Farm’s motion
 
 in limine,
 
 the appellants sought, and obtained, a ruling that Ms. Farley could not be identified as the motorist.
 

 After the venire was sworn and before voir dire, the trial court made the following statement to the prospective jurors:
 

 “[T]he case which is pending before this Court now is a civil case and it involves an incident which occurred on February the 9th, 2001, in the vicinity of Kelly Avenue and Sulgrave Avenue in Baltimore City. On that date, Mrs. Penelope King, who is a plaintiff in this case, was a pedestrian. She was struck by a motor vehicle while she was crossing the street.
 

 “It is admitted in this case that the driver of the car which struck Mrs. King was negligent in striking her and was the sole cause of the occurrence. It is further admitted and understood that Mrs. King was not at fault in any sense in this case.
 

 “What you will be called upon to determine in this case is what amount of damages, if any, ought to be awarded to the plaintiffs’ side based upon the evidence that is presented showing that damages were caused by the negligence of the operator of the vehicle which struck her.”
 

 Immediately before opening statements, the court told the impaneled jury that “this ... is the claim by the Kings for
 
 *292
 
 damages that resulted from Mrs. King being struck by a motor vehicle on February 9th, 2001.” Counsel for State Farm opened by stating his name and saying, “I’m the attorney for the defendant in this matter.”
 

 At trial, Mrs. King testified in person, and the medical experts for the parties testified via videotape deposition. As a result of the ruling prohibiting identifying State Farm as the defendant, a portion of the cross-examination of State Farm’s medical expert was excised. Appellants claim that this consequence of the ruling demonstrates actual prejudice.
 
 [4]
 

 After a three-day trial, the jury rendered an itemized verdict totaling $16,999.93. Judgment on that verdict was entered as satisfied, based upon appellants’ prior settlement with Allstate.
 

 In this Court appellants submit that “the identity of a party is not a matter of mere evidence, but is fundamental to the rule that the trier of fact must be aware of the real parties in interest to the litigation.” Brief of Appellants at 8. State Farm, on the other hand, submits that the requirement under Maryland Rule 2-201, under which “[ejvery action shall be prosecuted in the name of the real party in interest,” applies only to plaintiffs. State Farm sees the decision as to whether a defendant is to be identified to be an evidentiary ruling that, under the circumstances here, was within the discretion of the trial court. In addition, because this case involved only a question of damages, State Farm contends that the prohibition against identifying it as the defendant, .even if it were an abuse of discretion, was harmless error so that the judgment must be affirmed.
 

 As we shall explain below, the abuse of discretion analysis and the harmless error analysis merge.
 

 I. The Ordinary Procedure
 

 Maryland Rule l-301(a), a rule applicable “to all matters in all courts of this State, except the Orphans’ Courts,” Md. Rule
 
 *293
 
 l-101(a), mandates that an original pleading “contain the names and addresses, including zip code, of all parties,” unless unknown. Upon filing with the clerk of court, this information becomes of public record and remains so, even in the archives of closed cases, unless a statute, rule of court, or, under extraordinary circumstances, an order of court, provides otherwise.
 

 State Farm is the party defendant to this action. It “is a breach of contract action by the insured[s] against [their] own insurer. Under the statutorily required coverage, the defendant has directly promised to pay the insured plaintiff[s] under certain conditions.”
 
 Reese v. State Farm Mut. Auto. Ins. Co.,
 
 285 Md. 548, 552-53, 403 A.2d 1229, 1231 (1979) (holding that an insured under uninsured motorist (UM) coverage need not first sue the tortfeasor as a condition of recovery from the UM insurer). Because actions by an insured on a policy of UM/UIM insurance are contract actions, they “are governed by the principles and procedures applicable to contract actions generally.”
 
 Id.
 
 at 553, 403 A.2d at 1232.
 
 See also Lane v. Nationwide Mut. Ins. Co.,
 
 321 Md. 165, 169-70, 582 A.2d 501, 503 (1990).
 

 In a case in which the insured sued the UM/UIM insurer for failure to pay under that coverage, the Court of Appeals, in a clear reference to the ordinary procedure of identifying the parties for the jury, said: “In cases where the insurance carrier is a party to the litigation, obviously the existence of insurance cannot be kept from the jury.”
 
 Farley v. Allstate Ins. Co.,
 
 355 Md. 34, 42, 733 A.2d 1014, 1018 (1999). To the same effect, see also
 
 Allstate Ins. Co. v. Miller,
 
 315 Md. 182, 191, 553 A.2d 1268, 1272 (1989). The policy itself, however, containing limits of the UM/UIM coverage, should not be introduced, where limits are not an issue, because unfair prejudice from disclosing limits outweighs probative value. See
 
 Farley
 
 and
 
 Allstate v. Miller,
 
 both
 
 supra.
 

 Further, State Farm’s reliance on Md. Rule 5-411 is misplaced. That rule provides that, subject to exceptions, “[e]vidence that a person was or was not insured against
 
 *294
 
 liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.” In this action, the type of insurance, the existence of which the jury would learn from State Farm’s being identified as the defendant, is UM7 UIM insurance. Because UM/UIM coverage
 

 “is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is in insurance parlance ‘first party coverage’ like collision, comprehensive, medical payments or personal injury protection, and not ‘third party coverage’ such as personal injury or property damage liability insurance.”
 

 Reese,
 
 285 Md. at 552, 403 A.2d at 1231-32.
 

 Under ordinary circumstances this contract action on first party coverage proceeds with the defendant insurer identified to the jury.
 

 II. Characteristics of Departures from the Ordinary
 

 Here, the circuit court’s ruling that, before the jury, State Farm could litigate anonymously bears a significant degree of analogy to civil cases in which the trial court authorizes a party, almost always a plaintiff, to proceed using a pseudonym—the “John Doe” cases.
 
 [5]
 

 The companion provision in the federal system to Maryland Rule l-301(a) is Fed.R.Civ.P. 10(a). Federal courts agree that requiring all parties to be identified in the complaint is more than a statement of customary procedure. The rule embodies “the general principle that ‘the identity of the parties to a lawsuit should not be concealed.’ ”
 
 Southern Methodist Univ. Ass’n of Women Law Students v. Wynne & Jaffe,
 
 599 F.2d 707, 712 (5th Cir.1979) (quoting
 
 Doe v. Deschamps,
 
 64 F.R.D. 652, 653 (D.Mont.1974)).
 
 See also Doe v. Stegall,
 
 653 F.2d 180, 185,
 
 reh’g denied,
 
 659 F.2d 1075 (5th Cir.1981)
 
 *295
 
 (“First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings”);
 
 Free Market Compensation v. Commodity Exch., Inc.,
 
 98 F.R.D. 311, 312 (S.D.N.Y.1983) (“Generally, lawsuits are public events and the public has a legitimate interest in knowing the pertinent facts. Among the pertinent facts is the identity of the parties”);
 
 Doe v. Rostker,
 
 89 F.R.D. 158, 160 (N.D.Cal. 1981) (Fed.R.Civ.P. 10(a) “serves to apprise the parties of their opponents, and it protects the public’s legitimate interest in knowing all the facts and events surrounding court proceedings”).
 

 Doe v. Stegall, supra.,
 
 was an action by a mother and two children, brought in 1979, challenging the constitutionality of prayer and bible-reading broadcasts over the public address system in a middle school in Rankin County, Mississippi. The District Court had denied permission for the plaintiffs to proceed anonymously. The Fifth Circuit put the issue in the following perspective:
 

 “The equation linking the public’s right to attend trials and the public’s right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public’s view of the issues joined or the court’s performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party’s cause is pursued under a fictitious name. These crucial interests served by open trials are not inevitably compromised by allowing a party to proceed anonymously. Nevertheless, there remains a clear and strong First Amendment interest in ensuring that ‘(w)hat transpires in the courtroom is public property.’
 
 Craig v. Harney,
 
 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947).”
 

 Stegall,
 
 653 F.2d at 185 (some citations omitted).
 

 The Fifth Circuit in
 
 Doe v. Stegall,
 
 concluded:
 

 
 *296
 
 “We advance no hard and fast formula for ascertaining whether a party may sue anonymously. The decision requires a balancing of considerations calling for maintenance of a party’s privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings.”
 

 Id.
 
 at 186. Because of the “vulnerability of the child-litigants, the showing of possible threatened harm and social ostracization based upon militant religious attitudes, and the fundamental privateness of the religious beliefs,” of the plaintiffs, the court held that “the almost universal practice of disclosure must give way in this case to the privacy interests at stake.”
 
 Id.
 

 The court in
 
 Doe v. Rostker,
 
 89 F.R.D. 158, reviewed for “classifiable characteristics,”
 
 id.
 
 at 161, numerous cases involving requests to proceed anonymously. The court concluded that
 

 “[t]he most common instances are cases involving abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases. The common thread running through these cases is the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record.”
 

 Id. at 161 (footnotes omitted).
 

 It appears that concerns by plaintiffs that they will suffer adverse economic consequences unless permitted to proceed anonymously have not persuaded courts to conceal the identity of a litigant.
 

 The individual plaintiffs in
 
 Southern Methodist Univ. Ass’n of Women Law Students v. Wynne & Jajfe,
 
 599 F.2d 707, sought anonymously to sue two Dallas, Texas law firms for alleged gender discrimination in hiring. They asserted that they would be “vulnerable to retaliation from their current employers, prospective future employers and an organized bar that does ‘not like lawyers who sue lawyers.’ ”
 
 Id.
 
 at 718. The court found no “compelling need” to protect the plaintiffs’
 
 *297
 
 privacy.
 
 Id.
 
 Similarly, a prospective plaintiff sought to join in a pending securities fraud case by using a John Doe pseudonym in
 
 Free Market Compensation v. Commodity Exch., I'm.,
 
 98 F.R.D. 311. John Doe was a confidential informant whose continued furnishing of confidential information allegedly would have been jeopardized by the disclosure of his identity. In addition, disclosure would “cause him to ‘lose his job and suffer extreme economic and social harm as well as embarrassment and humiliation in his professional and social community.’ ”
 
 Id.
 
 at 312. The court held that this was insufficient, citing
 
 Southern Methodist, supra.
 

 In two cases that involve more extensive blackouts of public information than presented here, this Court has applied the principles under which the above-discussed cases were decided. We have expressly held that “the policy reasons enunciated by the Supreme Court in support of public access to criminal proceedings apply with equal force to civil proceedings.”
 
 Doe v. Shady Grove Adventist Hosp.,
 
 89 Md.App. 351, 359, 598 A.2d 507, 511 (1991);
 
 State v. Cottman Transmission Sys., Inc.,
 
 75 Md.App. 647, 656, 542 A.2d 859, 863 (1988).
 

 The complaint in
 
 Doe v. Shady Grove
 
 alleged breach of confidentiality of medical records and invasion of privacy. When filing the complaint, the plaintiff sought an injunction barring the defendants from publicly identifying the plaintiff, as well as permission to proceed as John Doe. The circuit court initially granted the injunction and also sealed the entire record, causing a newspaper to intervene. After a further hearing, the circuit court vacated the orders sealing the record and entering an injunction, and the court stayed enforcement pending appeal. Thereafter, the newspaper withdrew as an intervenor, but the corporate and individual defendants argued on appeal the public nature of the proceedings. This Court held that “the right of open access is a
 
 public
 
 one, and may be argued by any interested party.”
 
 Doe,
 
 89 Md.App. at 358 n. 3, 598 A.2d at 510 n. 3. Further, applying the First Amendment and Article 40 of the Maryland Declaration of Rights, the
 
 Doe
 
 court held that the plaintiff, who was seeking to prevent further publication of the diagnosis that he had
 
 *298
 
 contracted AIDS, had stated a sufficient privacy interest to proceed as John Doe. As a result of that ruling, there was no longer any justification to seal the records.
 
 Id.
 
 at 365, 598 A.2d at 514.
 

 In contrast to
 
 Doe,
 
 the weight to be given adverse economic consequences is illustrated in
 
 Cottman Transmission,
 
 75 Md. App. 647, 542 A.2d 859. That company franchised approximately 150 transmission repair centers, thirteen of which were in Maryland. The Consumer Protection Division of the Attorney General’s Office had sued Cottman for violations of consumer protection statutes. Publicity resulting from the suit caused a demonstrated loss in Cottman’s business. Thereafter, on the eve of the Attorney General’s applying for an interlocutory injunction, Cottman sought its own injunction, resulting in an order sealing the court records and closing court proceedings to all but the parties, their counsel, and witnesses. This Court conducted an emergency hearing and immediately reversed the orders. Speaking in the closure context, this Court held that “Cottman failed to demonstrate an interest that was sufficient to eclipse the strong presumption in favor of public access[.]”
 
 Id.
 
 at 658, 542 A.2d at 864.
 

 In the instant matter, the defendant, a corporation, has no personal right of privacy. Restatement (Second) of Torts § 6521, comment c (1977). Further, the unsubstantiated belief by State Farm that its disclosure as the defendant would adversely affect the jury’s verdict furnishes insufficient justification for withholding from the jury, and from the general public, State Farm’s identity as the defendant at a public trial. The lack of
 
 per se
 
 prejudice to the UM/UIM carrier in being identified at a trial at which the insured’s damages, under the policy, are determined by rules applicable to tort cases is shown by the permissibility of joining, as defendants in an action brought by the insured, the tortfeasor and the UM/ UIM carrier. See
 
 Waters v. U.S. Fidelity & Guar. Co.,
 
 328 Md. 700, 718, 616 A.2d 884, 892 (1992);
 
 Nationwide Mut. Ins. Co. v. Webb,
 
 291 Md. 721, 742-43, 436 A.2d 465, 477-78 (1981); A. Janquitto,
 
 Maryland Motor Vehicle Insurance
 
 § 8.20, at 49
 
 *299
 
 (2d ed. 2003 Supp.).
 
 [6]
 
 Indeed, State Farm’s position here is no different from that of any insurer that is sued directly for breach of its policy or from that of any apparently “deep pocket” corporation that is sued for breach of contract by its promisee. We hold that the circuit court abused its discretion in imposing this partial blackout on public information.
 

 III. The Error is Prejudicial
 

 State Farm submits that the error is harmless. Because the sole issue in the case was the amount of damages, to which the identity of the defendant is irrelevant, State Farm argues that the appellants could not have suffered any unfair prejudice by the court ordered concealment. As indicated in Part II above, however, the ruling’s impact is not limited exclusively to its effect on the plaintiffs.
 
 [7]
 

 The Supreme Court of Florida has taken the position that “it is per se reversible error for a trial court to exclude from a
 
 *300
 
 jury the identity of an [UM/UIM] insurance carrier that has been joined as a necessary party to an action.”
 
 Medina v. Peralta,
 
 724 So.2d 1188, 1189 (Fla.1999). The court reasoned as follows:
 

 “[Tjhis case does not involve an evidentiary ruling but, rather, a trial court’s pretrial instruction to entirely exclude the identity of a necessary party for or against whom a judgment will be entered. In such a case, we find that an examination of the record would be pointless because the entire proceeding was tainted by the pretrial exclusion of the insurer’s identity, which constitutes a miscarriage of justice as we explained in
 
 [Government Employees Ins. Co. v.] Krawzak
 
 [, 675 So.2d 115, 118 (Fla.1996)]:
 

 “‘[We have taken] a strong stand against charades in trials. To have the UM insurer, which by statute is a necessary party, not be so named to the jury is a pure fiction in violation of this policy. The unknown consequences of such a fiction could adversely affect the rights of the insured who contracted and paid for this insurance.’ ”
 

 Id.
 
 at 1189.
 

 This rationale was further explained by the Supreme Court of Florida in
 
 Lamz v. Geico Gen. Ins. Co.,
 
 803 So.2d 593 (Fla.2001), where the trial court had ruled that it would permit the defendant, GEICO, to be identified as the plaintiffs’ automobile insurance carrier, but had denied the plaintiffs’ request that GEICO “be specifically referred to as the plaintiffs’ ‘underinsured motorist carrier.’”
 
 Id.
 
 at 594. Holding that when the “carrier is properly named as a party defendant, it must be identified as such,”
 
 id.
 
 at 595, the court explained:
 

 “[F]ailure to specifically identify the underinsured carrier as such leaves the jury to speculate about the exact role of the plaintiffs carrier in the lawsuit, perpetuating the ‘charades in trials’ denounced by this Court in
 
 Dosdourian [v. Carsten,
 
 624 So.2d 241 (Fla.1993) ].
 

 “Moreover, [a] line of [Florida] cases clearly establishes the principle that the jury should be made aware of the
 
 *301
 
 precise identity of an uninsured or underinsured insurance carrier if it is a party at trial. The policy behind such a requirement is that full disclosure of the identity of the parties protects the integrity of the jury system and prevents charades at trial.”
 

 Id.
 

 The plaintiff in
 
 Wheeler v. Creekmore,
 
 469 S.W.2d 559 (Ky.1971), appealed from a judgment for the defendant entered on a jury verdict in an action against the tortfeasor and the plaintiffs UM/UIM carrier. Among the appellate issues raised, the plaintiff complained that the trial court had prohibited disclosing to the jury that the carrier was a party and that one of the attorneys at trial was counsel for the carrier. Holding this restriction to have been in error, the Supreme Court of Kentucky said:
 

 “The insurance company was in fact a party and we think properly so, because it had a direct contractual obligation to Mrs. Wheeler. Since the company was a party and was actively represented by counsel we think the jury was entitled to know that fact and to have the company’s counsel identified. Otherwise the jury would be left to speculate as to the interest represented by an attorney participating in the trial who had no apparent connection with any of the parties. It is our opinion that the considerations which have prompted the rule against mention of ordinary liability insurance in an automobile negligence case must yield in uninsured-motorist cases to the procedural desirability of letting the jury know who are the parties to the litigation where the uninsured motorist carrier elects to participate actively in the trial.”
 

 Id.
 
 at 563 (citations omitted). Because the court had found that a last clear chance instruction was erroneous, it was unnecessary for the court to rule whether the concealment of the carrier’s role was prejudicial.
 
 Id.
 

 Other cases recognizing the importance of having the jury know that a party before it is the plaintiffs UM/UIM carrier are
 
 Lima v. Chambers,
 
 657 P.2d 279, 285 (Utah 1982) (“The
 
 *302
 
 identity of the intervening insurance company should be made known to the jury”);
 
 State ex. rel State Farm Mut. Auto. Ins. Co. v. Canady,
 
 197 W.Va. 107, 475 S.E.2d 107, 113 (1996) (“[T]he jury is entitled to be aware of the uninsured motorist carrier’s identity”);
 
 Tucker v. McQuery,
 
 107 Ohio Misc.2d 38, 736 N.E.2d 574, 576 (1999) (“[JJurors have the right to know who the real party in interest is”).
 
 See also
 
 2
 
 Wigmore on Evidence
 
 § 282a, at 168 (Chadbourn rev. ed.1979) (stating that it is “an independent principle of law ... that every party in a trial—and the jurors also—are entitled to know who is his opponent”).
 
 [8]
 

 A 180-degree twist on the trial tactics pursued by State Farm in the instant matter was presented in
 
 Oliver v. Perry,
 
 293 Ala. 424, 304 So.2d 583 (1974). The plaintiffs UM carrier intervened in the plaintiff’s action against the tortfeasor and, over objection, essentially told the jury in opening statement that it was the plaintiff’s uninsured motorist carrier. After a verdict for the defendant, the plaintiff appealed, alleging that it was error for the UM carrier to have identified itself as such. In affirming, the court said:
 

 “The only reason that Nationwide was involved in the suit was because [the tortfeasor] was uninsured. Since it had the right to intervene, it follows it should have the opportunity to tell the jury its reason for being there, and this necessarily entailed at least some mention of the [tortfeasor’s uninsured] status.”
 

 Id.
 
 at 586.
 

 State Farm refers us to
 
 Krotine v. Neer,
 
 2002 WL 31838301 (Ohio App.), in which the court found no prejudice in fact to the plaintiff.
 
 [9]
 
 In that case the plaintiff had sued the tortfeasor and the plaintiffs UIM carrier. Disappointed in the verdict, the plaintiff raised six issues on appeal, one of which
 
 *303
 
 was that the “trial court incorrectly refused to instruct the jury concerning plaintiffs underinsured motorist claim[.]”
 
 Id.
 
 at *7. The case was one in which causation and the extent of damages were the only issues. Finding no reversible error, the court said:
 

 “Other than making the assertion that he had the 'right’ to inform the jury that he was suing his own insurer, plaintiff fails to advance any fact or legal argument which might demonstrate that the trial court abused its discretion, or that plaintiff was in fact prejudiced by the trial court’s ruling.”
 

 Id,
 
 The judgment was reversed in part on other grounds, and the case was remanded. We are unpersuaded by the opinion in
 
 Krotine,
 
 which gives no consideration to the potential for jury confusion.
 

 Under Maryland law, significant deviations from a required procedure established to protect an important interest are presumed to be prejudicial. See
 
 Safeway Stores, Inc. v. Watson,
 
 317 Md. 178, 562 A.2d 1242 (1989) (erroneous exclusion of corporate defendant’s representative from trial);
 
 Harris v. David S. Harris, P.A.,
 
 310 Md. 310, 320, 529 A.2d 356, 361 (1987) (erroneous disqualification of counsel selected by party);
 
 King v. State Roads Comm’n,
 
 284 Md. 368, 372, 396 A.2d 267, 270 (1979) (erroneous impairment of parties’ exercise of peremptory challenges with result that trial judge “had more to say about who would not sit on the panel than either of the parties”);
 
 Wyatt v. Johnson,
 
 103 Md.App. 250, 653 A.2d 496 (1995) (failure to use statutorily required itemized verdict sheet in personal injury case).
 

 We hold that, under the facts of the instant case, the court’s ruling, concealing State Farm’s identity and role as the party defendant, infringed on the role of the jury and created a significant procedural error that requires reversal.
 

 JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR A NEW TRIAL.
 

 COSTS TO BE PAID BY THE APPELLEE.
 

 [1]
 

 . State Farm waived subrogation against Ms. Farley. See Maryland Code (1997, 2002 Repl.Vol.), § 19-511(b)(1) and (e)(1) of the Insurance Article.
 

 [2]
 

 . Where one spouse is injured, the liability policy limit of damages for the person suffering the bodily injury includes the damages for loss of consortium, an injury to the marital relationship.
 
 See Travelers Indem. Co. v. Comelsen,
 
 272 Md. 48, 321 A.2d 149 (1974)
 

 [3]
 

 . Appellants' complaint also included a second claim that was asserted against the licensed insurance agent, through whom the appellants had obtained their State Farm policy, and against State Farm, on a respondeat superior theory. This second claim alleged that the agent negligently had failed to advise the appellants "of the alternatives or need for higher coverage limits for uninsured motorist coverage.” This claim had been bifurcated from the claim on the UIM policy. Because the verdict and judgment on the UIM claim were under $100,000, judgment was entered in favor of the defendants on the malpractice claim.
 

 [4]
 

 . In the view we take of this case, see Part III,
 
 infra,
 
 this issue need not be decided.
 

 [5]
 

 . Absent most unusual, advance, consensual arrangements, it would seem to be impossible to commence a civil action against a defendant identified only by a pseudonym. See, e.g.,
 
 Breslin v. City & County of Philadelphia, 92
 
 F.R.D. 764 (E.D.Pa.1981).
 

 [6]
 

 . The prejudice to a UM/UIM carrier from being identified as a party has been called "not significant” by a Federal Magistrate Judge in the District of Maryland who relied on
 
 Farley v. Allstate,
 
 355 Md. 34, 733 A.2d 1014, and
 
 Allstate v. Miller,
 
 315 Md. 182, 553 A.2d 1268, when denying the carrier's motion
 
 in limine
 
 seeking to suppress its identity.
 
 Connolly v. Lotkin,
 
 2000 WL 1508258 (D.Md.2000).
 

 [7]
 

 . In a related context it has been held that it is prejudicial error to prevent a plaintiff from asserting a contract claim against the UM/UIM insurer without joinder of the tortfeasor. In
 
 Winner v. Ratzlaff,
 
 211 Kan. 59, 505 P.2d 606 (1973), the plaintiff had sued the tortfeasor who, the plaintiff later learned, was uninsured. The plaintiff then joined his UM carrier and attempted to dismiss the tortfeasor. In the erroneous belief that a judgment first had to be obtained against the tortfeasor, the trial court refused dismissal, forcing the plaintiff to trial against both the tortfeasor and the carrier. Judgment was entered for both defendants. On appeal, after holding that the insured could bring an action only against the carrier, in which the liability of the tortfeasor could be determined, the Supreme Court of Kansas addressed whether the error was prejudicial. The court concluded:
 

 "[The plaintiff] had substantive rights by reason of his insurance contract which he was prevented from asserting in the manner desired. We think a litigant should not thus be deprived of control of his lawsuit, and to do so, under the particular posture of this case, constituted prejudicial error.”
 

 Id.
 
 at 612. See also
 
 Associated Indem. Corp.
 
 v.
 
 Cannon,
 
 536 P.2d 920 (Okla.1975) (applying
 
 Winner
 
 rationale).
 

 [8]
 

 . The editors of
 
 Wigmore
 
 go so far as to assert this independent principle in support of the admissibility of the fact of liability insurance and of the fact that a person not of record is defending.
 

 [9]
 

 . The opinion in
 
 Krotine
 
 is not officially reported.